ON MOTION FOR REHEARING

PER CURIAM.
We grant petitioners’ motion for rehearing, withdraw our dismissal of their certio-rari petition challenging the trial court’s order denying their motion for a protective order, and issue the following written opinion.
Jack Holtsberg and Elaine Holtsberg (Plaintiffs) sued the petitioners (Defendants) over the second-hand reports of *1267 Smith Barney stock analyst Jack Grubman (Grubman) regarding the future prospects and prices of the stock of MCI WorldCom. They asserted that they lost the value of their investments in WorldCom when it went bankrupt in 2002. They contended that Grubman’s favorable statements were misleading, that he had conflicts of interest, and that his statements benefited himself as well as Defendants.
In the course of discovery, Plaintiffs have subpoenaed for deposition Sanford I. Weill (Weill), Citigroup’s former chief executive officer (CEO) and present chairman of its board, and Charles 0. Prince (Prince), Citigroup’s current CEO. Defendants moved for a protective order to prevent their depositions, arguing this was a blatant attempt to harass Defendants because, inter alia, neither individual had firsthand knowledge of the facts of the case. They argued that before Plaintiffs can depose Citigroup’s high level executives, they must show that those persons have unique or special knowledge of the facts at issue and that Plaintiffs have already exhausted less burdensome avenues of obtaining the information sought. In other words, they must satisfy the “apex” doctrine. According to Defendants, the “apex” doctrine was recognized in Florida by Department of Agriculture and Consumer Services v. Broward County, 810 So.2d 1056, 1057 (Fla. 1st DCA 2002). In that case, the first district did not use the term “apex,” but held that the department was entitled to a protective order after the challengers of a proposed rule noticed the department commissioner for deposition and the department offered the deputy commissioner as substitute. The court found that, “[i]n circumstances such as these, the agency head should not be subject to deposition, over objection, unless and until the opposing parties have exhausted other discovery and can demonstrate that the agency head is uniquely able to provide relevant information which cannot be obtained from other sources.” Id. at 1058. No affidavits from the two men sought to be deposed were attached to the motion.
In opposing the motion for a protective order in this case, Plaintiffs pointed out that the apex rule has not been expressly adopted in Florida, and that in Texas, where it was adopted, the party seeking a protective order must file the affidavit of the officials sought to be deposed, denying knowledge of the relevant facts. They also cited a Florida Bar Journal article[1] for the proposition that such an affidavit must be attached to the motion for protective order in Florida. They further argued that a rigid rule like the apex doctrine contravenes Florida Rule of Civil Procedure 1.310(a) (allowing deposition of any person, including a party) and Plantation-Simon Inc. v. Bahloul, 596 So.2d 1159 (Fla. 4th DCA 1992) (holding that a tenant could notice deposition of the president of the landlord’s corporate general partner and was not limited to procedure in which landlord partnership decides which officer would testify for it).
Plaintiffs also noted that Citigroup contended it was only a holding company that did not employ Grubman and was not responsible for his actions. In order to prove Citigroup’s liability, it was necessary for Plaintiffs to show that Prince and Weill, its upper 'management, were intimately involved in Grubman’s conduct in making the alleged misleading statements and that they were the only ones who could speak of Citigroup’s intent and mo *1268 tive. Thus, the conduct and knowledge of the highest level executives were relevant in this case.
Plaintiffs further argued that it was not necessary for them to show that Prince and Weill had relevant personal knowledge; it was Defendants’ responsibility to prove, on the record, that they did not. Prior to becoming Citigroup’s CEO, Prince was the administrative officer, the chief operating officer, and then CEO of the global corporate and investment banking group. This case concerns the relationship between the investment banking group and the analysis arm of Smith Barney, headed by John Hoffmann (Hoff-mann). Plaintiffs related the allegations of an SEC complaint that Grubman sought Weill’s help in getting his children into a selective preschool run by the 92nd Street Y, which allegedly was accomplished by Grubman’s upgrading his analysis of AT & T stock from “neutral” to “buy,” which in turn resulted in significant investment banking fees accruing to Salomon Smith Barney, and Citigroup’s pledging $1 million over five years to the 92nd Street Y, a pledge which was approved by Prince and Weill. Prince was also on the compensation committee that paid Grubman $20 million at a time when Hoffmann, Grubman’s supervisor two levels removed, was being paid only $1 million.
Plaintiffs also argued that the apex doctrine was not accepted in Florida because it was arbitrary; to avoid being deposed, Weill and Prince had to show undue burden or harassment and they had shown neither. The trial court denied the motion for protective order and Defendants filed this petition for writ of certiorari.
In this court, Defendants rely on Department of Agriculture and Consumer Services and a more recent case, Horne v. School Board of Miami-Dade County, 901 So.2d 238 (Fla. 1st DCA 2005). However, both cases arose in a governmental, rather than corporate, context.
In Department of Agriculture, the first district granted certiorari relief, holding that the department was entitled to a protective order after challengers of a proposed rule noticed the commissioner of the department for deposition and the department offered instead the deputy commissioner, to whom authority for the program to which the rule pertained had been delegated. The court explained:
We agree with the department that the ALJ abused his discretion in denying the motion for protective order. In circumstances such as these, the agency head should not be subject to deposition, over objection, unless and until the opposing parties have exhausted other discovery and can demonstrate that the agency head is uniquely able to provide relevant information which cannot be obtained from other sources. To hold otherwise would, as argued by the department, subject agency heads to being deposed in virtually every rule challenge proceeding, to the detriment of the efficient operation of the agency in particular and state government as a whole.
810 So.2d at 1058.
In Home, the petitioners sought review of an order denying their motion for a protective order to prevent the respondent school board from deposing Mr. Horne, the former commissioner of education, regarding school funding decisions made when he was commissioner. The trial court denied the motion because Horne was the former commissioner. The first district held, however, that its earlier decision in Department of Agriculture applied to former as well as current government officials; to rule otherwise would discourage people from accepting positions as public servants. 901 So.2d at 240-41.
*1269 In granting relief and exercising its cer-tiorari jurisdiction in the above two cases, the first district apparently concluded that an undue burden or harassment had been shown. In contrast, the motion for protective order in this case did not allege that any particularized burden or harassment would result to Weill or Prince from being deposed, nor was any evidence presented to the trial court that such burden or harassment would result. See Topp Telecom, Inc. v. Atkins, 763 So.2d 1197 (Fla. 4th DCA 2000) (dismissing certiorari petition and holding that trial court did not err in overruling objection to production of documents as constituting undue burden where objection was not supported by record evidence).
Defendants apparently rely on the “apex doctrine” itself to supply the irreparable harm factor. Expressly adopted in some jurisdictions, this doctrine protects the top officers of a corporation from being deposed without a showing that they have unique or special knowledge of the events in question and that the party seeking the deposition is unable to obtain the information using less intrusive means. See, e.g., Cronm Cent. Petroleum Corp. v. Garcia, 904 S.W.2d 125 (Tex.1995). In that case, the court explained as follows:
When a party seeks to depose a corporate president or other high level corporate official and that official (or the corporation) files a motion for protective order to prohibit the deposition accompanied by the official’s affidavit denying any knowledge of relevant facts, the trial court should first determine whether the party seeking the deposition has arguably shown that the official has any unique or superior personal knowledge of discoverable information. If the party seeking the deposition cannot show that the official has any unique or superior personal knowledge of discoverable information, the trial court should grant the motion for protective order and first require the party seeking the deposition to attempt to obtain the discovery through less intrusive methods. Depending upon the circumstances of the particular case, these methods could include the depositions of lower level employees, the deposition of the corporation itself, and interrogatories and requests for production of documents directed to the corporation. After making a good faith effort to obtain the discovery through less intrusive methods, the party seeking the deposition may attempt to show (1) that there is a reasonable indication that the official’s deposition is calculated to lead to the discovery of admissible evidence, and (2) that the less intrusive methods of discovery are unsatisfactory, insufficient or inadequate. If the party seeking the deposition makes this showing, the trial court should modify or vacate the protective order as appropriate. As with any deponent, the trial court retains discretion to restrict the duration, scope and location of the deposition. If the party seeking the deposition fails to make this showing, the trial court should leave the protective order in place.
Id. at 128 (emphasis added).
First, no reported Florida appellate court opinion has expressly adopted the doctrine; a district court of appeal cannot adopt a doctrine which arguably conflicts with the discovery rules. Because discovery rules are rules of practice and procedure, only the Florida Supreme Court has this authority. Art. V, § 2(a), Fla. Const. Florida’s discovery rules do not contain a requirement that a party must show that a high level officer has unique or superior knowledge before the officer can be deposed. Fla. R. Civ. P. 1.280(b)(1) (allowing a party to discover any matter that is not privileged and is *1270 relevant to the subject matter of the pending action or appears reasonably calculated to lead to the discovery of admissible evidence). Yet, trial courts have broad discretion in overseeing discovery and in protecting persons from whom discovery is sought. Fla. R. Civ. P. 1.280(c); Rojas v. Ryder Truck Rental, Inc., 641 So.2d 855, 857 (Fla.1994). If good cause is shown, the court can prohibit or limit discovery in order to protect a person or party from annoyance, embarrassment, oppression, or undue burden or expense. Fla. R. Civ. P. 1.280(c).
To the extent the first district may have adopted the doctrine in Department of Agriculture and Home, those cases are distinguishable as arising in a governmental context, where there are policy arguments, such as not discouraging people from accepting positions as public servants, that are not applicable in the corporate context.
Second, even if the doctrine were to apply, the instant petition would have to be denied because Defendants’ motion was not accompanied by the officials’ affidavits denying any knowledge of relevant facts. The burden would be on Defendants to show that Weill and Prince had no relevant knowledge. As Plaintiffs explained in their objection to the motion, what they seek to prove against Citigroup is that it was involved in a fraudulent scheme in which Grubman gave dishonest analyses to profit himself as well as Defendants. This can be established only by persons who can testify to Citigroup’s own intent, namely, its senior officers, Weill and Prince. Thus, their conduct and knowledge are highly relevant to the case. “[Cjourts should not hesitate to deny protection if it appears that the apex official has personal knowledge of the relevant claims at issue or if the motivations behind corporate actions are at issue.” Moskowitz, supra note 1, at 12.
The petition for certiorari relief is denied.
STEVENSON, C.J., SHAHOOD and TAYLOR, JJ., concur.

. Adam M. Moskowitz, "Deposing ‘Apex’ Officials in Florida: Shooting Straight for the fop,” 72 Florida Bar Journal 10 (Dec. 1998).