# Third District Court of Appeal

## State of Florida

Opinion filed November 19, 2014.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-974
Lower Tribunal No. 10-38782
_____

**Racetrac Petroleum, Inc.,**
Petitioner,

vs.

**Elizabeth Sewell, etc.,**
Respondent.


On Petition for Writ of Certiorari to the Circuit Court for Miami-Dade County, Daryl E. Trawick, Judge.

Luks, Santaniello, Petrillo & Jones, and Daniel J. Santaniello and Doreen E. Lasch (Fort Lauderdale), for petitioner.

Schlesinger Law Offices, P.A., and Sheldon J. Schlesinger and Crane A. Johnstone (Fort Lauderdale); Burlington & Rockenbach, P.A., and Philip M. Burlington and Nichole J. Segal (West Palm Beach), for respondent.


Before ROTHENBERG, LOGUE, and SCALES, JJ.

SCALES, J.

Petitioner, RaceTrac Petroleum, Inc. (RaceTrac), defendant below, seeks a writ of certiorari quashing the trial court's order denying RaceTrac's motion for protective order and granting plaintiff's motion to compel. Because the standard for certiorari relief has not been met, RaceTrac's petition is denied.

## I.    Facts

In 1997, RaceTrac entered into a contract to purchase real property on Northeast 8th Street/Campbell Drive (Campbell Drive) in Homestead, Florida for the purpose of operating a gas station/convenience store.

The purchase and sale contract between RaceTrac (as purchaser) and the property's seller conditioned the sale upon the purchaser obtaining approval from all necessary governmental agencies to construct a median cut on Campbell Drive to align with the existing curb cut on the southern property line of the subject property.

The median cut would allow for direct ingress and egress between the property and the eastbound lanes of Campbell Drive without requiring eastbound drivers to make a U-turn to access the gas station. In 1999, RaceTrac obtained the necessary approvals and closed on the property (the subject gas station).

Several years later, in 2010, Respondent, Elizabeth Sewell (Sewell), as legal guardian of her daughter Crystal Sewell (Crystal), brought suit against RaceTrac to

recover damages suffered by Crystal in a car accident. The accident occurred in 2007, near the subject gas station.

Sewell alleged that Crystal was traveling east in the left lane of Campbell Drive when a vehicle rapidly exited the subject gas station, crossed the two westbound traffic lanes of Campbell Drive, and passed through the break in the median into Crystal's eastbound lane. As a result, according to Sewell's allegations, Crystal lost control of her car, collided with a palm tree, and was seriously injured.

Sewell alleged that RaceTrac was negligent for a host of reasons primarily regarding posting of signage at the subject gas station (e.g., failing to safely direct and control the vehicles leaving the subject gas station; failing to post appropriate stop signs at the exit to the subject gas station, or at the median; failing to post signage at the subject gas station's exit or on the median facing its exit, advising or alerting vehicle operators not to cross the westbound traffic lanes on Campbell Drive; failing to erect signage at the subject gas station's exit or on the median instructing motorists that they could only turn left from the subject driveway; maintaining the driveway markings and arrows that allowed, directed, and encouraged motorists exiting the subject gas station to cross the westbound lanes of Campbell Drive; etc.).

Pursuant to Florida Rule of Civil Procedure Rule 1.310(b)(6)[1], Sewell noticed RaceTrac seeking to depose: (1) the corporate representative with the most knowledge of selecting locations for RaceTrac gas stations; and (2) the corporate representative with the most knowledge of selecting the location for the subject gas station.[2]

---

[1] Florida Rule of Civil Procedure 1.310(b)(6) reads as follows:

> **(b) Notice; method of Taking; Production at Deposition.**
> . . . .
> (6) In the notice a party may name as the deponent a public or private corporation, a partnership or association, or a governmental agency, and designate with reasonable particularity the matters on which examination is requested. The organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to do so, to testify on its behalf and may state the matters on which each person designated will testify. The persons so designated shall testify about matters known or reasonably available to the organization. This subdivision does not preclude taking a deposition by any other procedure authorized in these rules.

[2] It appears from the record that Sewell served subpoenas on RaceTrac seeking to depose corporate representatives with the "most knowledge" on the specified topics. First, we note that "[r]ule 1.310(b)(6) does not require—or for that matter even contemplate—that the corporation produce the witness with the 'most knowledge' on the specified topic(s) . . . ." Carriage Hills Condo., Inc. v. JBH Roofing & Constructors, Inc., 109 So. 3d 329, 334 (Fla. 4th DCA 2013). Second, we note that although Sewell subpoenaed RaceTrac seeking to depose corporate representatives with knowledge on the specified topics, both parties characterize such subpoenas as notices of deposition pursuant to rule 1.310(b)(6). For ease of reference, throughout this opinion, we will refer to such subpoenas as rule 1.310(b)(6) notices. See Logitech Cargo, U.S.A., Corp. v. JW Perry, Inc., 817 So. 2d 1033 (Fla. 3d DCA 2002) (quashing trial court's order that required defendant to subpoena, rather than simply notice, under rule 1.310(b)(6), corporate representatives of plaintiff).

In response to Sewell's rule 1.310(b)(6) notice, RaceTrac identified Lesliegh Batchelor, director of real estate, as the appropriate corporate representative.[3]

Batchelor began working for RaceTrac in 1994 as a real estate representative. Batchelor was promoted to a vice president of real estate in approximately 1997.[4] Batchelor ceased employment with RaceTrac in 2000, and returned to work at RaceTrac in 2005 as the manager of real estate.[5]

Sewell took Batchelor's deposition at RaceTrac's corporate offices in Atlanta. During her deposition, Batchelor testified that several potential sites for the subject gas station, including the subject site, were selected in 1994, prior to her employment with RaceTrac. Batchelor testified that Mark Hunter, who was another vice president of real estate until he left the company in 1998, was the person initially tasked with selecting potential sites for the subject gas station. Batchelor also testified that Max Lenker, president of RaceTrac, was involved in the site selection process of the subject site.

[3] Sewell also noticed RaceTrac seeking to depose the corporate representative with the most knowledge of designing RaceTrac gas stations. RaceTrac identified Max McBrayer, who was vice president of engineering when RaceTrac purchased the property, as the appropriate corporate representative. Sewell deposed McBrayer.

[4] In approximately 1997, Batchelor was promoted to a vice president of real estate to replace Mark Hunter, who was then a vice president of real estate. Hunter ceased employment with RaceTrac in approximately 1998. Batchelor was promoted prior to Hunter's departure.

[5] In 2013, Batchelor's job title technically changed from manager of real estate to director of real estate, although her job duties did not change.

5

According to Batchelor's testimony, after Hunter narrowed down potential locations for the subject gas station, Lenker would visit potential sites and evaluate the sites based on certain criteria, such as proximity to a limited access road, traffic count, and visibility.

Batchelor further testified that Carl Bolch, Jr., who was another vice president of real estate during the relevant time, was also involved in the site selection and approval process for the subject gas station.

Currently, Hunter is no longer employed by RaceTrac; Lenker is still RaceTrac's president, and Bolch is now RaceTrac's CEO.

Ostensibly, because Batchelor testified that Hunter, Lenker, and Bolch were involved in the selection of the subject gas station's location, Sewell's counsel deemed it necessary to take the depositions of these three high-level current and former RaceTrac officers.

RaceTrac resisted Sewell's attempts to take these depositions, resulting in RaceTrac filing a motion for protective order and Sewell filing a motion to compel.

RaceTrac argued that rule 1.310(b)(6) provides the mechanism for a corporate entity to identify the person with knowledge of the relevant matters, and, because Batchelor provided the information requested (as identified in Sewell's rule 1.310(b)(6) deposition notice), Sewell could not compel the depositions of additional corporate representatives.

Essentially, RaceTrac argued that, unless the rule 1.310(b)(6) designee fails to give the information requested, a plaintiff may not compel the deposition of any other corporate representatives, even if such other corporate representatives were identified by the rule 1.310(b)(6) designee as having knowledge of the same subject matter.

A general magistrate held a hearing on Sewell's motion to compel and RaceTrac's motion for protective order. The magistrate issued a report and recommendation granting Sewell's motion to compel and denying RaceTrac's motion for protective order.

RaceTrac filed exceptions to the general magistrate's order, and, on April 3, 2014, the trial court overruled RaceTrac's exceptions and adopted the general magistrate's report and recommendations. Pursuant to Florida Rule of Civil Procedure 1.280(c)(2)[6], however, the trial court limited the depositions of Hunter, Lenker, and Bolch to one hour each.

---

[6] Florida Rule of Civil Procedure 1.280(c) reads, in its entirety, as follows:

> **(c) Protective Orders.** Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending may make any order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense that justice requires, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that

RaceTrac now petitions this Court to enter a writ of certiorari quashing the trial court's order.

## II.     Standard for Certiorari Review of Discovery Orders

A party petitioning for certiorari review of a discovery order must demonstrate that the contested order: (1) departs from the essential requirements of the law; (2) results in a material injury for the remainder of the case; (3) cannot be corrected on postjudgment appeal. Bd. of Trustees of the Internal Improvement Trust Fund v. Am. Educ. Enters. LLC, 99 So. 3d 450, 454 (Fla. 2012).

Trial courts are accorded broad discretion in the treatment of discovery problems, and such orders reviewed pursuant to a petition for writ of certiorari will not be overturned absent departure from the essential requirements of law. See Nestor v. Posner-Gerstenhaber, 857 So. 2d 953, 955 (Fla. 3d DCA 2003) ("Because the trial court has broad discretion in discovery matters . . . and there

---

the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; and (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court. If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery. The provisions of rule 1.380(a)(4) apply to the award of expenses incurred in relation to the motion.

8

has been no clear departure from the essential requirements of law which results in a miscarriage of justice, we deny certiorari review.") (citation omitted).

## III. <u>Analysis</u>

As framed by RaceTrac, the issue on certiorari review is whether rule 1.310(b)(6) prevents a party from deposing officers not identified by the corporation in response to a rule 1.310(b)(6) notice when the rule 1.310(b)(6) designee testifies that other officers in the company have the same or similar knowledge.[7,8]

RaceTrac argues that its production of witnesses who had personal knowledge of the subjects designated in Sewell's rule 1.310(b)(6) notices fully complied with the requisites of the rule, and the trial court departed from the

---

[7] Sewell disputes RaceTrac's characterization of Hunter, Lenker, and Bolch as having the "same or similar" knowledge as Batchelor. According to Sewell, Hunter, Lenker, and Bolch have knowledge that is "unique" from Batchelor's knowledge.

[8] The parties stipulate that Florida has not adopted the "apex doctrine," which effectively shields upper level executives and corporate officers from depositions absent a showing that such top executives and officers have unique or special knowledge of the events in question and that the party seeking the deposition is unable to obtain the information from using a less intrusive means. See Gen. Star Idem. Co. v. Atl. Hospitality of Fla., LLC, 57 So. 3d 238, 239 n.3 (Fla. 3d DCA 2011) (noting that this Court "has not expressly adopted the 'apex doctrine.'"); Citigroup Inc. v. Holtsberg, 915 So. 2d 1265, 1269 (Fla. 4th DCA 2005) ("[N]o reported Florida appellate court opinion has expressly adopted the [apex] doctrine . . . .").

essential requirements of law by allowing Sewell to depose other RaceTrac officers who may also have personal knowledge of those subjects. We disagree.

In 1972, rule 1.310(b)(6) was amended to conform with Federal Rule of Civil Procedure 30(b)(6) (as amended in 1970). The rule now permits the deposition of a legal entity through a representative knowledgeable as to specifically identified issues. After receiving the rule 1.310(b)(6) notice, the entity must designate the appropriate person or persons to be deposed on the issues identified in the notice. In re Florida Bar: Rules of Civil Procedure, 265 So. 2d 21, 30 (Fla. 1972) (Committee Note to 1972 amendment); Plantation-Simon Inc. v. Bahloul, 596 So. 2d 1159, 1160 (Fla. 4th DCA 1992).

Importantly, rule 1.310(b)(6) expressly provides that the outlined procedure is not exclusive: "This subdivision does not preclude taking a deposition by any other procedure authorized in these rules." Fla. R. Civ. P. 1.310(b)(6). Thus, the rule appears to contemplate the ability of a party to take additional depositions of corporate representatives, albeit subject to all general discovery provisions of rule 1.280.

If a witness identified by an entity pursuant to a rule 1.310(b)(6) notice is deposed, and identifies another person associated with the entity who may also have knowledge of the same subject matter identified in the rule 1.310(b)(6) notice, the trial court is almost always in a better position than the appellate court

to determine whether the deposing party is entitled to depose the identified person. Cf. Plantation-Simon, 596 So. 2d at 1161 ("[T]he trial judge is given discretion to determine whether either party is misusing this discovery device [simple notice to the corporate party] . . . . [I]f the trial judge finds that seriatim depositions of corporate officers has [sic] created a burden on the corporate party, the court is empowered to alleviate that burden in a proper case by, e.g., limiting the examining party to the designation procedure.").

In such circumstances, rule 1.280(c), governing protective orders, gives the trial court significant discretion in determining whether such potentially cumulative depositions should occur, and, if so, what restrictions should be imposed. See Waite v. Wellington Boats, Inc., 459 So. 2d 425, 426 (Fla. 1st DCA 1984) ("Trial courts must be accorded broad discretion in the treatment of discovery problems through the employment of the protective provisions contemplated by Rule 1.280.").

In this case, while the trial court allowed the potentially cumulative depositions, the trial court restricted each deposition to no longer than an hour to mollify the alleged disruption of RaceTrac's corporate operations and limit the potentially redundant or irrelevant testimony.

11

Hence, while we are not unsympathetic to RaceTrac's position, on this record, we cannot conclude that the trial court departed from the essential requirements of law.[9]

## IV.  **Conclusion**

Because RaceTrac has not established that the trial court departed from the essential requirements of law, its petition for certiorari is denied.

Petition denied.

---

[9] Our conclusion is based exclusively on the elements we are required to consider in reviewing whether to grant a petition seeking a writ of certiorari challenging a discovery order. We offer no opinion as to the relevance of the testimony of the three corporate officers involved in the purchase of the property almost a decade before a car accident occurred off of the property; that issue is not before us.