# Third District Court of Appeal

## State of Florida

Opinion filed April 24, 2019.
Not final until disposition of timely filed motion for rehearing.

————————

No. 3D18-2218
Lower Tribunal No. 15-25946

————————

**Miami Dade College,**
Petitioner,

vs.

**Isabel del Pino Allen,**
Respondent.

A Writ of Certiorari to the Circuit Court for Miami-Dade County, Miguel M. De La O, Judge.

Allen, Norton & Blue, P.A., and Luke Savage, for petitioner.

Isabel del Pino Allen, in proper person.

Before SALTER, LINDSEY, and MILLER, JJ.

LINDSEY, J.

Petitioner Miami Dade College seeks certiorari review of the trial court's order denying its Motion for Protective Order, which sought to prevent Respondent

1

Isabel del Pino Allen from deposing the College's President, Eduardo J. Padron, Ph.D. Because the trial court failed to find (1) that Allen had exhausted all discovery tools prior to seeking President Padron's deposition and (2) that the information Allen sought from President Padron was necessary and unavailable from another source, we grant the petition and quash the order under review.

## I.    PROCEDURAL AND FACTUAL BACKGROUND

On November 6, 2015, Allen sued the College, alleging, *inter alia,* that she was terminated from her position as a faculty member in violation of Florida's Whistle-blower's Act. The petition before us stems from Allen's attempt to depose President Padron in order to question him about two letters Allen sent disclosing the College's purported violations.[1] In December 2015 and January 2016, Allen served interrogatories on the College. Allen did not direct her interrogatories to President Padron, and she did not seek information concerning the letters or President Padron's alleged personal involvement in her termination.

On February 20, 2018, Allen filed an Amended Complaint with three additional counts and four new defendants: Drs. Eduardo Padron, Lenore Rodicio, Malou Harrison, and Joy Ruff "in their respective official capacity as president of MDC, provost of MDC, president of the North Campus of MDC, and MDC's Coordinator of Equal Opportunity Programs." The College moved to dismiss the

---

[1] Allen did not mention these letters or President Padron in her initial complaint.

2

new counts and also moved to strike Padron, Rodicio, Harrison, and Ruff as defendants, arguing that there was no stated cause of action for suit against any of them. On June 26, 2018, the trial court granted the College's motion to dismiss two of the new counts (Counts II and III) without prejudice.[2]

On July 9, 2018, Allen filed an "Amended Counts II and III of Existing Complaint," attempting to restate two of the three recently dismissed claims. Allen listed Padron, Rodicio, Harrison, and Ruff as defendants in their "official capacity." The College again moved to dismiss. According to the College, its motion to dismiss remains pending.

On September 28, 2018, Allen filed a Notice of taking Deposition, seeking a videotaped deposition of President Padron. The College filed a Motion for Protective Order, arguing that Allen could not show that President Padron had "particularized, first-hand knowledge that cannot be obtained from any other source[.]" On October 11, 2018, the trial court entered an order denying the College's motion, finding that "Dr. Pardon [sic] has particularized first-hand knowledge of material facts." The court further determined that Allen was "entitled to depose Dr. Padron as to his receipt of her letters and any knowledge he has about the circumstances surrounding her termination."[3] Following the denial

---

[2] Allen voluntarily withdrew the third new count (Count IV), which was a defamation claim against Ruff.

[3] The trial court made these factual findings and entered this order without conducting a hearing, evidentiary or otherwise.

of its Motion for Reconsideration, the College petitioned this Court for certiorari review of the trial court's order denying its Motion for Protective Order.

## II. ANALYSIS

A party seeking certiorari review of a non-final order must first demonstrate that the order under review would result in a material injury that cannot be corrected on appeal (often referred to as "irreparable harm"). See Miami-Dade Cty. v. Dade Cty. Police Benev. Ass'n, 103 So. 3d 236, 238 (Fla. 3d DCA 2012). A finding of irreparable harm is jurisdictional and must be addressed before the merits. Id. If the jurisdictional requirement is satisfied, petitioner must then demonstrate that the trial court departed from the essential requirements of the law. Id.

We have jurisdiction to review the trial court's discovery order. See id. ("Orders granting discovery requests have traditionally been reviewed by certiorari because once discovery is wrongfully granted, the complaining party is beyond relief." (quoting Horne v. Sch. Bd. of Miami-Dade Cty., 901 So. 2d 238, 240 (Fla. 1st DCA 2005))). We therefore address the merits of the Petition—whether the trial court departed from the essential requirements of the law when it denied the College's Motion for Protective Order.

"Before requiring the head of a state agency to testify, a trial court must find: 1) the party seeking the testimony has exhausted all discovery tools in an

4

attempt to obtain the information sought; and 2) the testimony sought is necessary and unavailable from other witnesses."[4]  Florida Office of Ins. Regulation v. Florida Dep't of Fin. Servs., 159 So. 3d 945, 947 (Fla. 1st DCA 2015) (citing Dep't of Agric. & Consumer Servs. v. Broward Cty., 810 So. 2d 1056, 1058 (Fla. 1st DCA 2002); Dep't of Health & Rehabilitative Servs. v. Brooke, 573 So. 2d 363, 371 (Fla. 1st DCA 1991)); see also Dade Cty. Police Benev. Ass'n, 103 So. 3d at 239.

Because President Padron is an agency head,[5] the trial court was required to find (1) that Allen had exhausted all other discovery tools prior to seeking President Padron's deposition and (2) that President Padron's testimony was necessary and unavailable from other witnesses.  Although the order under review found that President Padron has particularized knowledge of material facts, it is silent as to whether Allen exhausted all discovery tools or whether President

---

[4] "Some state and federal courts refer to this doctrine as the 'apex' doctrine . . . ." Florida Office of Ins. Regulation, 159 So. 3d at 950.  Our application of this doctrine is limited to the issue before us involving the deposition of a governmental officer.  See Dade Cty. Police Benev. Ass'n, 103 So. 3d at 239 (applying the apex doctrine on certiorari to review an order requiring the mayor of Miami-Dade County to testify in an unfair labor practice proceeding); cf. Gen. Star Indem. Co. v. Atl. Hosp. of Fla., LLC, 57 So. 3d 238, 239 n.3 (Fla. 3d DCA 2011) (declining to apply the apex doctrine to corporate officers but recognizing that the doctrine has been applied in Florida "in cases involving the deposition of senior state governmental officers").

[5] Florida's Administrative Procedures Act defines "agency head" as "the person or collegial body in a department or other governmental unit statutorily responsible for final agency action." § 120.52(3), Fla. Stat. (2018).

Padron's testimony was necessary and unavailable from another source. Based on our review of the record, we determine that Allen did not comply with the exhaustion requirement. Moreover, Allen concedes that at least some of the information she seeks regarding President Padron's involvement was available from other witnesses. Therefore, the trial court departed from the essential requirements of the law when it denied the College's Motion for Protective Order.

In her Response to the College's Petition, Allen states that she has "concluded all other discovery," including serving two sets of interrogatories and taking depositions "of the other named defendants in the case." While it is true that Allen served two sets of interrogatories on the College, not a single interrogatory was directed to President Padron, nor did the interrogatories seek information concerning the letters that Allen sent to President Padron or President Padron's alleged personal involvement in Allen's termination. Further, Allen did not serve requests for production or any other discovery directed to President Padron concerning the letters or his knowledge of the circumstances surrounding her termination. With respect to the depositions of the other named defendants, Allen seems to concede, in her response to the College's Motion for Protective Order, that she was able to obtain some of the information she seeks from President Padron from other witnesses: "Allen has already presented ample

evidence to prove that MDC and Defendant Padron violated Florida's Whistle-blower's Act . . . ."

In short, Allen has not shown, and the trial court did not find, that she had exhausted all other discovery tools in an attempt to obtain the information she seeks from President Padron or that the information was necessary and unavailable from another source. We therefore grant the Petition for Writ of Certiorari and quash the order under review.

Petition granted; order quashed.

SALTER, J., concurs.

MILLER, J. (specially concurring)

While I agree with the result reached by the majority, I see no principled basis for broadly invoking reference to the "apex doctrine." Thus, I write separately.

Compelling Dr. Eduardo Padron, an agency head, to appear for deposition, in his official capacity, without the requisite showing of necessity, detrimentally affects "the efficient operation of the [executive] branch and government as a whole," thus, creating material injury irremediable on postjudgment appeal. Miami-Dade Cty. v. Dade Cty. Police Benevolent Ass'n, 103 So. 3d 236, 238 (Fla. 3d DCA 2012); see also Fla. Office of Ins. Regulation v. Fla. Dep't of Fin. Servs., 159 So. 3d 945, 952-53 (Fla. 1st DCA 2015) ("The time spent preparing and testifying in this case will take away from the Insurance Commissioner's duties and responsibilities as an agency head for the state of Florida, and the precedent served by compelling him to testify will create 'a significant deterrent to qualified candidates seeking public service positions.'") (citation omitted); City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc., No. 2:15-mc-0146 WBS AC, at *2 (E.D. Cal. Dec. 24, 2015) ("[B]ecause the head of a government agency could have all of his or her time monopolized by discovery in lawsuits to which

they are not even parties, if they could be compelled to testify every time the agency carried out its responsibilities," restraints on such depositions are proper.). The trial court strayed from the essential requirements of law by allowing the deposition to proceed, despite Allen's failure to demonstrate that Dr. Padron was uniquely able to provide relevant information, which could not be obtained from other sources, and that she had exhausted other means of discovery. See Dep't of Agric. and Consumer Servs. v. Broward Cty., 810 So. 2d 1056, 1058 (Fla. 1st DCA 2002) ("[T]he agency head should not be subject to deposition, over objection, unless and until the opposing parties have exhausted other discovery and can demonstrate that the agency head is uniquely able to provide relevant information which cannot be obtained from other sources."); see also Pardo v. State, 596 So. 2d 665, 666 (Fla. 1992) ("[I]n the absence of interdistrict conflict, district court decisions bind all Florida trial courts."); see, e.g., Siegle v. Lee Cty., 198 So. 3d 773, 777 (Fla. 2d DCA 2016) ("No such contrary binding authority exists . . . the circuit court's ruling . . . constituted a departure from the essential requirements of the law."); State v. Walsh, 204 So. 3d 169, 171 (Fla. 1st DCA 2016) ("The circuit court [engaged in profound] error by . . . fail[ing] to follow binding precedent of a sibling court."). Thus, I agree certiorari relief is warranted. However, "[b]ecause '[t]his is a sufficient ground for deciding this case . . . the cardinal principle of judicial restraint . . . counsels us to go no further." Pintado v.

9

Miami-Dade Cty. Hous. Agency, 20 So. 3d 929, 933 (Fla. 3d DCA 2009) (Shepherd, J., concurring) (citation omitted); see also Menendez v. W. Gables Rehab. Hosp., LLC, 123 So. 3d 1178, 1181 n.2 (Fla 3d DCA 2013) ("[I]f it is not necessary to decide more, it is necessary not to decide more.") (alteration in original) (quoting PDK Labs., Inc. v. U.S. D.E.A., 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring)).

Nevertheless, the majority assigns the nomenclature "apex doctrine" to the above-cited standard, and in doing so, conflates the apex doctrine, a judicially-created rule shielding upper level executives and corporate officials from discovery, with Florida's two-pronged agency-head deposition test. As a threshold matter, the apex doctrine was not relied upon in the proceedings below or advanced by the parties in their briefs. As "[a] party may not rely on this Court to make his arguments for him," sua sponte reliance upon the apex doctrine contravenes principles of judicial restraint. Rorke v. Savoy Energy, LP, 677 N.W.2d 45, 51 (Mich. Ct. App. 2003); see also Wright v. City of Miami Gardens, 200 So. 3d 765, 780 (Fla. 2016) (Canady, J., concurring in result only) ("It is not within the province of [this Court] to overturn the ruling of a lower court on a ground that has not been urged by the party challenging the lower court's decision."); Miami-Dade Cty. v. Omnipoint Holdings, Inc., 863 So. 2d 195, 200-01 (Fla. 2003) (holding the District Court of Appeal "exceeded the proper scope of . . .

10

review when it, sua sponte" passed on "an issue neither party raised in any phase of the proceedings."); Allan D. Vestal, <u>Sua Sponte Consideration in Appellate Review</u>, 27 Fordham L. Rev. 477, 494 (1958) ("When considered sua sponte . . . [n]either party has had any opportunity to consider the matter, and both are now bound by res judicata grounded on considerations which represent not well reasoned positions for the litigants, but rather only the fortuitous decision of a wayward court.").

Further, numerous opinions, including those from this Court, acknowledge that the apex doctrine has yet to be adopted in Florida. <u>See</u> <u>Remington Lodging & Hosp., LLC v. Southernmost House, LTD.</u>, 206 So. 3d 764, 765 n.1 (Fla. 3d DCA 2016) ("No Florida appellate decision has adopted the apex doctrine."); <u>Racetrac Petroleum, Inc. v. Sewell</u>, 150 So. 3d 1247, 1251 n.8 (Fla. 3d DCA 2014) ("The parties stipulate that Florida has not adopted the 'apex doctrine.'"); <u>Gen. Star Indem. Co. v. Atl. Hosp. of Fla., LLC</u>, 57 So. 3d 238, 239 n.3 (Fla. 3d DCA 2011) (noting "this Court has not expressly adopted the 'apex doctrine.'"); <u>Citigroup Inc. v. Holtsberg</u>, 915 So. 2d 1265, 1269 (Fla. 4th DCA 2005) ("[N]o reported Florida appellate court opinion has expressly adopted the [apex] doctrine."). Finally, under the apex deposition doctrine, the movant is required to append an affidavit denying knowledge of relevant facts. <u>Holtsberg</u>, 915 So. 2d at 1270 ("[E]ven if the doctrine were to apply, the instant petition would have to be denied because [the]

11

motion was not accompanied by the officials' affidavits denying any knowledge of relevant facts."). Here, Dr. Padron did not file such an affidavit, nor could he, according to the findings of the trial court.

Accordingly, although I agree we should grant a writ of certiorari and quash the discovery order entered below, to the extent the majority suggests existing precedent reflects the adoption of the apex doctrine, I decline to join the majority's reasoning.