# Third District Court of Appeal

## State of Florida

Opinion filed October 2, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D24-0566
Lower Tribunal No. 21-17014-CA-01
_____


**McLane Foodservice, Inc.,**
Petitioner,

vs.

**Elizabeth Wool,**
Respondent.


A Writ of Certiorari to the Circuit Court for Miami-Dade County, Jose M. Rodriguez, Judge.

Wicker Smith O'Hara McCoy & Ford, P.A., and Jessica L. Gross and Nina N. Batista, for petitioner.

Lauri Waldman Ross, P.A., and Lauri Waldman Ross; South Florida Appeals, PA, and Wm. Allen Bonner, for respondent.


Before SCALES, LINDSEY, and BOKOR, JJ.

LINDSEY, J.

Petitioner McLane Foodservice, Inc. (Defendant below) seeks a writ of certiorari quashing the trial court's order compelling the deposition of its current President. We grant the petition for the reasons set forth below.

**INTRODUCTION**

The instant petition involves a discovery dispute in an underlying negligence action. Respondent Elizabeth Wool (Plaintiff below), an employee of a Miami-based Kentucky Fried Chicken restaurant, alleges she sustained injuries when she attempted to unstack boxes of chicken that McLane delivery drivers had delivered earlier that same day. Wool alleges that McLane's negligence caused her injuries.

McLane is a nationwide company that distributes food and foodservice items to restaurants throughout the United States. A multibillion-dollar company with 48 distribution centers around the nation, McLane employs more than 9,000 people. Susan Adzick is McLane's current President. The order under review compels her deposition.

**PROCEDURAL HISTORY**

The lengthy procedural history below informs our decision herein. On September 9, 2022, Wool noticed the deposition of a McLane corporate representative prepared in accordance with Florida Rule of Civil Procedure 1.310(b)(6). In the notice, Wool designated certain matters/topics for the

deposition regarding the subject incident, including: the policies and procedures for unloading boxes, the transportation and/or delivery of boxes, the policies and procedures for placement and/or stacking of boxes, and the training and supervision provided in connection therewith. McLane produced Lamont Lawson as the corporate representative.

McLane also produced two documents in response to Wool's request for production of "[a]ny and all contracts pertaining to the delivery of foodservice products to the Subject Property on March 1, 2021." The two documents were entitled (1) the Participant Distribution Joinder Agreement and (2) the Master Distribution Agreement, collectively (the "Agreements"). Both Agreements were entered into by McLane and non-parties. And Adzick signed both in her then role as Senior Vice President of Sales and Strategic Relations.[1]

Wool deposed Lawson, McLane's designated corporate representative, on October 11, 2022. Lawson was asked about the two Agreements but proved unable to discuss them. We note, however, that the

---

[1] Since that time, Adzick has been promoted to her current position as President of McLane.

Agreements were not specifically designated as an area of inquiry in the September 9, 2022 notice of deposition.[2]

Thereafter, Wool moved to compel the deposition of Adzick on the basis that she was a signatory to the Agreements. In response, McLane moved for a protective order and filed an accompanying Affidavit from Adzick averring that she does not have any personal knowledge or unique information pertaining to the facts or issues being litigated.

On August 11, 2023, the trial court held a hearing on Wool's Motion to Compel and McLane's Motion for Protective Order. At the hearing, Wool argued that because Adzick signed the Agreements, Wool should be entitled to take Adzick's deposition. McLane responded that the Apex Doctrine forecloses deposing Adzick.[3] At the conclusion of the hearing, the trial court sua sponte stated on the record that it would allow Wool "to designate new areas of inquiry of the corporate rep." Thereafter, on August 14, 2023, the trial court entered a written order deferring ruling on Wool's Motion to Compel and McLane's Motion for Protective Order and ordering McLane to produce

---

[2] Thus, Wool's complaint that Lawson did not have adequate knowledge of the Agreements is of no moment.

[3] See Fla. R. Civ. P. 1.280(h). Effective January 1, 2025, the Apex Doctrine Rule will be moved from 1.280(h) to 1.280(i). See In re Amends. to Fla. R. Civ. P., 386 So. 3d 497 (Fla. 2024).

4

a corporate representative for deposition "on topics related to the contracts produced by McLane" and signed by Adzick.

Then, on August 31, 2023, Wool served a second notice for a corporate representative deposition. In the notice, McLane designated certain matters/topics regarding the content of the Agreements, compliance with the Agreements with respect to delivery and/or stacking of boxes, the rationale for entering into the Agreements, the due diligence process in evaluating the decision to enter into the Agreements, and information regarding all persons with decision-making authority to enter into the Agreements.

In response, McLane produced Paul Frazier for deposition on October 6, 2023. Frazier knew about the Agreements and confirmed that they do not contain any details about the delivery height of any boxes, the height or the weight of deliveries, or the performance standards having to do with the method boxes are delivered. However, Frazier had limited knowledge about the details of the Agreements because he was not involved in their preparation. He did, however, identify other individuals at McLane who would have more knowledge. Thereafter, on October 27, 2023, Wool filed a Renewed Motion to Compel the Deposition of Adzick alleging that Frazier "was unable to answer multiple critical questions about the contracts, and the designated deposition topics, due to his lack of knowledge."

On February 28, 2024, the trial court entered a written order granting Wool's Motion to Compel the deposition of Adzick and denying McLane's Motion for Protective Order. In its order, the trial court acknowledged that Adzick had filed an Affidavit averring that she had no personal knowledge or unique information pertaining to the facts or issues being litigated. Yet, in concluding that the Apex Doctrine does not preclude Wool from deposing Adzick at this stage in the proceedings, the trial court found that Wool demonstrated that she exhausted other discovery, that such discovery is inadequate, and that Adzick has unique personal knowledge of discoverable information.

This timely petition followed.

**ANALYSIS**

A writ of certiorari is proper where a petitioner demonstrates "(1) a material injury in the proceedings that cannot be corrected on appeal (sometimes referred to as irreparable harm); and (2) a 'depart[ure] from the essential requirements of the law.'" E.g., Nader v. Fla. Dept. of Highway Safety & Motor Vehicles, 87 So. 3d 712, 721 (Fla. 2012) (quoting Belair v. Drew, 770 So. 2d 1164, 1166 (Fla. 2000)). "A finding that the petitioning party has 'suffered an irreparable harm that cannot be remedied on direct appeal' is a 'condition precedent to invoking a district court's certiorari

6

jurisdiction.'" Bd. of Trs. of Internal Improvement Tr. Fund v. Am. Educ. Enters., LLC, 99 So. 3d 450, 454-55 (Fla. 2012) (quoting Jaye v. Royal Saxon, Inc., 720 So. 2d 214, 215 (Fla. 1998)).

Certiorari jurisdiction lies to review an order compelling the deposition of a high-level corporate official because "[o]nce discovery is wrongfully granted, the complaining party is beyond relief." DecisionHR USA, Inc. v. Mills, 341 So. 3d 448, 452 (Fla. 2d DCA 2022) (quoting Miami Dade Coll. v. Allen, 271 So. 3d 1194, 1196 (Fla. 3d DCA 2019)). "We therefore address the merits of the petition—whether the trial court departed from the essential requirements of the law . . . ." Tesla, Inc. v. Monserratt, 384 So. 3d 194, 196 (Fla. 4th DCA 2024).

In August 2021, the Florida Supreme Court adopted Florida Rule of Civil Procedure 1.280(h), thereby codifying the Apex Doctrine, which protects "high-level corporate officers from the risk of abusive discovery, while still honoring opposing litigants' right to depose such persons if necessary." In re Amends. to Fla. R. Civ. P. 1.280, 324 So. 3d 459, 459 (Fla. 2021).[4] "[O]nce the supreme court codified the apex doctrine, the

---

[4] Before the adoption of Rule 1.280(h), "Florida's version of the apex doctrine, developed by the district courts of appeal as a common law gloss on our rules of civil procedure, protect[ed] only high-level government officials." In re Amends. to Fla. R. Civ. P. 1.280, 324 So. 3d at 459.

7

requirements of the rule became clearly established principles of law."

Chewy, Inc. v. Covetrus, Inc., 384 So. 3d 265, 269 (Fla. 4th DCA 2024)

(citing DecisionHR USA, 341 So. 3d at 453).

"We construe rule 1.280(h) as we would a statute, which means that if the text of the rule is unambiguous, we apply the rule as written without resort to principles of construction. The text of rule 1.280(h) is unambiguous, and our supreme court has provided a detailed explanation of the reasons for the rule and key aspects of its application." DecisionHR USA, 341 So. 3d at 454 (Fla. 2d DCA 2022) (citations omitted). We turn now to the essential requirements of the rule.

Under the Apex Doctrine rule, "[a] current or former high-level government or corporate officer may seek an order preventing the officer from being subject to a deposition." Fla. R. Civ. P. 1.280(h). Here, it is undisputed that Adzick, the President of McLane, is a current high-level corporate officer; therefore, this requirement is satisfied. Cf. In re Amends. to Fla. R. Civ. P. 1.280, 324 So. 3d at 462 ("When that person's 'high-level' status is disputed, the burden is on the person or party resisting the deposition to persuade the court that this requirement is satisfied.").

Next, the rule requires "an affidavit or declaration of the officer explaining that the officer lacks unique, personal knowledge of the issues

8

being litigated." Fla. R. Civ. P. 1.280(h). It is undisputed that Adzick filed an Affidavit in response to Wool's first Motion to Compel, disclaiming personal knowledge of the issues being litigated, and at no point below did Wool challenge the sufficiency of the Affidavit.[5]

Once McLane established that Adzick was a high-level corporate officer and produced a sufficient Affidavit, the court was required to issue an order preventing the deposition, "unless the party seeking the deposition demonstrates that it has exhausted other discovery, that such discovery is inadequate, and that the officer has unique, personal knowledge of discoverable information." Id. We conclude that the trial court departed from the essential requirements of the law because Wool failed to satisfy these burdens.

Prior to ordering Adzick's deposition, the trial court ordered McLane to provide a corporate representative with knowledge of the Agreements. McLane produced Paul Frazier, Vice President of National Accounts. In his deposition, Frazier stated that he knew of the Agreements but had no knowledge of the details because he was not involved with the preparation of the Agreements. He did, however, testify that there were other individuals

---

[5] Moreover, the trial court made no findings with respect to the sufficiency of Adzick's Affidavit, thus implicitly approving of the same. Instead, the trial court focused on Wool's burdens under the Apex Doctrine.

9

at McLane who would have more knowledge of the Agreements, such as Jeff Hayes:

> Q Okay. If I wanted to ask someone else at McLane about the provisions in these agreements that you were not familiar with, is it -- is it fair to assume that Ms. Adzick would have knowledge about those provisions?
>
> . . . .
>
> THE WITNESS: Fair, I would think Jeff Hayes would be the -- the person more intimately familiar with some of this terminology.

Frazier also identified Tom Zatina as the president of McLane when the Agreements were put into effect:

> Q Is the -- and the McLane Foodservice president, is that Ms. Adzick?
>
> A At the time that this agreement was put into effect, that would have been Tom Zatina.

When asked who had knowledge about McLane's delivery policies and procedures, Frazier identified the individual general managers:

> Q Okay. Now, does McLane have policies and procedures that maybe expound on this deemed delivered language and require the McLane drivers not only to place the product in the correct storage area, but to stack the products in a certain way or leave them in a certain way at a store?
>
> A That would really be out -- outside my area of expertise . . . .

10

Q Okay. And who would have knowledge about that at McLane?

. . . .

THE WITNESS: . . . That would have to be the individual general managers of the -- of the warehouses and/or their operational leadership.

The record before us is devoid of any effort on the part of Wool to depose Hayes, Zatina, or any of the individual managers supervising the day-to-day delivery operations, as Frazier identified in his deposition. Thus, Frazier's references to others who "would be more intimately familiar" with the contract language demonstrate that Adzick's knowledge is not "unique" and that Wool did not meet her burden to "exhaust" discovery on this issue. See Tesla, 384 So. 3d at 197 (granting petition for writ of certiorari because "Plaintiff has not shown that the existing discovery is inadequate or that Mr. Musk has unique, personal knowledge of discoverable information"); Chewy, 384 So. 3d at 273 (granting petition for writ of certiorari because respondent failed "to exhaust discovery before seeking to depose the CEO, it also failed, as discussed above, to sustain its burden that the CEO has unique, personal knowledge of discoverable information (i.e., information that cannot be obtained from other sources)").

**CONCLUSION**

11

For the above reasons, we conclude that the trial court departed from the essential requirements of the law in determining that Wool met her burden under Rule 1.280(h) because she failed to demonstrate that she exhausted other discovery, that such discovery was inadequate, and that Adzick has unique, personal knowledge of discoverable information. Accordingly, we grant the petition for writ of certiorari and quash the order below compelling Adzick's deposition.

Petition granted; order quashed.