WOLF, J.
The Florida Office of Insurance Regulation (OIR) files a petition for writ of certio-rari challenging a discovery order compelling the Florida Insurance Commissioner, who is the agency head of OIR,[1] to appear for a deposition. OIR asserts that the trial court departed from the essential requirements of law in ordering the deposition. We agree.
Before requiring the head of a state agency to testify, a trial court must find: 1) the party seeking the testimony has exhausted all discovery tools in an attempt to obtain the information sought; and 2) the testimony sought is necessary and unavailable from other witnesses. Dep’t of Agrie. & Consumer Services v. Broward County, 810 So.2d 1056, 1058 (Fla. 1st DCA 2002); Dep’t of Health & Rehabilitative Servs. v. Brooke, 573 So.2d 363, 371 (Fla. 1st DCA 1991). We determine that while respondents may have satisfied the first prong of the analysis, they failed to meet the second prong. We also find that compelling the Insurance Commissioner to testify at a deposition during which respondents intended to ask him hypothetical questions regarding how he would have carried out his statutory duties in a hypothetical situation violates the separation of powers doctrine. We, therefore, issue the writ of certiorari and quash the trial court’s order compelling the deposition of the Insurance Commissioner.

*948
Underlying Cause of Action

The underlying cause of action was filed by respondent Department of Financial Services (DFS), acting as receiver for Southern Family Insurance Company, Atlantic Preferred Insurance Company, and Florida Preferred Property Insurance Company (the insurance companies), against respondent Deloitte & Touche, LLP (Deloitte). The complaint alleged that Deloitte negligently prepared inaccurate financial statements for the insurance companies that were filed with OIR in 2005, and that had Deloitte prepared accurate financial statements as required by sections 624.4085 and 624.424, Florida Statutes, • OIR would have recommended that DFS take the insurance companies into receivership in 2005. Instead, it was not until the 2006 financial statements were filed that OIR recommended DFS take the insurance companies into receivership. DFS further alleged that this failure to take the insurance companies into receivership in 2005 caused harm to the insurance companies and consumers.

Statutory Framework

Insurers are required to file annual financial statements with OIR to enable OIR to monitor their solvency. See, e.g., §§ 624.4085(2)(c), 624.424, Fla. Stat. “Upon a determination by [OIR] that one or more grounds for the initiation of delinquency proceedings exist pursuant to this chapter and that delinquency proceedings must be initiated, the Director of the Office of Insurance Regulation shall notify [DFS] of such determination and shall provide [DFS] with all necessary documentation and evidence. [DFS] shall then initiate such delinquency proceedings.” § 631.031(1), Fla. Stat. “The head of the Office of Insurance Regulation is the Director of the Office of Insurance Regulation, who may also be known as the Commissioner of Insurance Regulation.” § 20.121(3)(a)l., Fla. Stat. See also § 631.051, Fla. Stat. (setting forth the grounds upon which DFS may petition for an order directing it to rehabilitate an insurer); § 631.061, Fla. Stat. (authorizing DFS to apply to the court to be appointed as receiver and directing it to liquidate an insurer).

Attempts to Depose or Add Insurance Commissioner to Witness List

Between September 2013 and May 2014, Deloitte made several attempts to subpoena the Insurance Commissioner, Kevin McCarty, for deposition, and DFS made several attempts to add him to its trial witness list. OIR successfully challenged those attempts on the basis that McCarty was the agency head of OIR and that the testimony sought from him was available from other sources.
Later, DFS filed a motion in limine to preclude Deloitte from making any mention during trial of the fact that McCarty would not be testifying. DFS noted its efforts to add McCarty to its witness list had been unsuccessful, as had Deloitte’s efforts to subpoena McCarty. Because neither party demonstrated sufficient grounds to overcome the presumption against agency heads testifying, DFS argued neither party should be permitted to reference McCarty’s failure to testify at trial. During a hearing, the court expressed concern as to how it would enforce such a motion even if the court granted it. Because McCarty is the regulator who decides whether to refer insurance companies for receivership, the court reasoned the witnesses would necessarily have to discuss McCarty by name. DFS clarified it was simply seeking to prevent Deloitte from arguing “the only one who can tell you what OIR would have done is Mr. *949 McCarty,” and he is not here to testify.[2] The court again expressed concern that the “heart and soul of DFS’ case” was its argument that McCarty would have referred the insurers for receivership in 2005, and the court did not see how it could prevent Deloitte from arguing that DFS had not met that burden because McCarty did not testify.
Deloitte stated that it did not object to DFS adding McCarty to its witness list, so long as Deloitte could depose him. The court ruled that DFS could amend its witness list to add McCarty and Deloitte could depose him. OIR stated it would file an objection.

OIR’s Motion to Quash Subpoena for Deposition and for Protective Order; McCarty Affidavit

Pursuant to the trial court’s ruling, DFS added McCarty to its witness list, and Deloitte subpoenaed McCarty for deposition. OIR filed a motion to quash the subpoena for deposition and for a protective order from including McCarty on DFS’s witness list. OIR argued that to require McCarty to appear at deposition and trial would require a lot of time-consuming preparation, which would be particularly burdensome because it was hurricane season. OIR also reiterated its prior argument that McCarty had no unique, relevant information that could not be obtained from other sources. OIR noted that under section 631.051(B), the Commissioner shall notify DFS “[u]pon a determination by the office ” that an insurer was insolvent. (Emphasis added). Thus, OIR argued that OIR staff was equally capable of testifying to OIR’s determination that the insurance companies were insolvent in 2006, and to answer any hypothetical questions as to what OIR would have done differently in 2005 if the financial statements had reflected that the insurance companies were insolvent at that time.
OIR attached to its motion an affidavit from McCarty. McCarty stated that he referred the insurance companies to DFS in 2006 as he was statutorily required to do by section 631.031 “ ‘[ujpon a determination by the office ’ ” that the insurer was insolvent. He stated he “did not conduct an independent review of the ‘[insurance companies]’ insolvency,” and instead his “decision to refer a company to DFS ... pursuant to Chapter 631 is based on the findings and recommendations from Office staff.” Thus, he stated he had no unique, personal knowledge or firsthand factual information.
Deloitte filed a response. Deloitte argued OIR’s claim that McCarty would have had no meaningful role in the decision to refer the insurance companies was not credible and was contradicted by the deposition testimony of numerous OIR personnel who stated McCarty was actively involved in determining whether grounds existed to initiate delinquency proceedings.

Order Denying the Motion to Quash and for Protective Order

The trial court entered a written order denying the motion to quash the subpoena and for protective order from including McCarty on DFS’s witness list. The court found that based on the “unique circumstances of this case ... McCarty’s testimony is essential and necessary for a full determination of the issues raised by the parties to this case.” First, the court found the parties demonstrated that McCarty “is the only person who could provide the relevant testimony ... as to *950 what factors he would have considered and what he ultimately would or would not have done [in 2005]” had he believed the insurance companies were insolvent. The court stated that finding was supported by the deposition testimony of three OIR staff members who were immediately subordinate to McCarty, who testified that OIR cannot refer an insurance company to DFS for receivership without McCarty’s approval, and that McCarty had an “active involvement in the process by which the OIR staff develops a referral recommendation.” The court further stated that finding was supported by section 631.031(1), which states only the Insurance Commissioner may refer an insurer to DFS for receivership. Second, the court found that because the parties have deposed eight other OIR witnesses, including McCarty’s subordinates, all other discovery tools had been exhausted.
The court found all of the cases relied on by OIR protecting agency heads from testifying were distinguishable because in those cases, the agency head had no personal knowledge or involvement in the agency action being challenged, or the information was available from other sources. Thus, the court denied the motion.

“Apex” Doctrine

It is well-established in Florida that “the agency head should not be subject to deposition, over objection, unless and until the opposing parties have exhausted other discovery and can demonstrate that the agency head is uniquely able to provide relevant information which cannot be obtained from other sources.” Dep’t of Agrie., 810 So.2d at 1058. “To hold otherwise would ... subject agency heads to being deposed in virtually every rule challenge proceeding, to the detriment of the efficient operation of the agency in particular and state government as a whole.” Id. “Thus, a party seeking to depose a ... high-ranking governmental official must demonstrate the personal involvement of the official in a material way or the existence of extraordinary circumstances.” Home v. Sch. Bd. of Miami-Dade County, 901 So.2d 238, 241 (Fla. 1st DCA 2005).
This doctrine also applies to trial testimony. “ ‘[Department heads and similarly high-ranking officials should not ordinarily be compelled to testify unless it has been established that the testimony to be elicited is necessary and relevant and unavailable from a lesser ranking officer.’ ” Brooke, 573 So.2d at 371 (quoting Halderman v. Pennhurst State School and Hospital, 559 F.Supp. 153 (E.D.Pa.1982)). This doctrine is rooted in separation of powers considerations, as well as policy concerns that overly burdensome requirements for public officials could discourage people from accepting positions as public servants. See Home, 901 So.2d at 241; Brooke, 573 So.2d at 371. See also Miami-Dade County v. Dade County Police Benevolent Ass’n, 103 So.3d 236, 239 (Fla. 3d DCA 2012); Hadi v. L.B., B.B., R.B., & E.B., 946 So.2d 1132, 1133 (Fla. 1st DCA 2006)..
Some state and federal courts refer to this doctrine as the “apex” doctrine, in the context of both high-ranking government and corporate officials. See, e.g.; State ex rel. Massachusetts Mut. Life Ins. Co. v. Sanders, 228 W.Va. 749, 724 S.E.2d 353, 363 (2012) (adopting the “apex” doctrine in the corporate context and noting that doctrine is “analogous to the approach this Court adopted for use when a party seeks to depose [a] high-ranking governmental official”); Crown Cent. Petroleum Corp. v. Garcia, 904 S.W.2d 125 (Tex.1995) (applying the “apex” doctrine to the deposition of a corporate officer); K.C.R. v. County of Los Angeles, CV 13-3806 PSG SSX, 2014 *951 WL 3434257, at *6 (C.D.Cal.2014) (finding the “apex” doctrine precluded the deposition of a high-ranking government official).
We note that no Florida court has adopted the apex doctrine in the corporate context.[3] In Citigroup Inc. v. Holtsberg, the Fourth District indicated in dicta that it would not be inclined to do so because it arguably conflicts with Florida’s discovery rules. 915 So.2d 1265, 1267 (Fla. 4th DCA 2005) (holding that even if the court were to apply the apex doctrine, the doctrine would not preclude the deposition of two corporate executives in that case). However, the Citigroup court noted that to the extent the First District adopted the apex doctrine in Dep’t of Agrie, and Home, those cases were distinguishable because they arose in the “governmental context, where there are policy arguments, such as not discouraging people from accepting positions as public servants, that are not applicable in the corporate context.” Id. at 1270. We would also emphasize that the government context is distinguishable because of separation of powers concerns, which will be discussed in more detail below.

Whether the Information Sought from the Insurance Commissioner is Necessary and Unavailable from Other Sources

While respondents may have exhausted all discovery tools, we find the information they seek from the Insurance Commissioner is neither necessary to DFS’s cause of action nor unavailable from other sources.
In order to determine necessity, one must look at the crux of the cause of action in the trial court. In the underlying action, the burden on DFS is to prove that the actions of Deloitte more likely than not caused the injuries to the consumers and the insurance companies. Whitney v. R.J. Reynolds Tobacco Co., 157 So.3d 309 (Fla. 1st DCA 2014); Aragon v. Issa, 103 So.3d 887 (Fla. 4th DCA 2012). Specifically, in this case, DFS must demonstrate it is more likely than not that OIR and the Insurance Commissioner would have recommended that DFS take the insurance companies into receivership in 2005 if they had been provided with accurate financial information by Deloitte. DFS claims that it is necessary to question the Insurance Commissioner on his “opinion” as to whether he would have recommended that DFS take the insurance companies into receivership in 2005 if Deloitte had provided accurate financial statements and what factors he would have considered in making that hypothetical decision. However, the testimony DFS seeks would be based on hypothetical facts equally available to all parties.
DFS seeks the Insurance Commissioner’s “opinion” testimony on how he hypothetically might have exercised his statutory duties in making a discretionary decision based on a hypothetical scenario. This is not the traditional case where discovery is sought from an agency head because the agency head is the only person who is aware of what pertinent facts were in the agency’s possession or were actually relied on at the time an actual decision was made. Instead here, respondents seek to ask the Insurance Commissioner questions about a hypothetical decision that he never actually made. Additionally, while the Commissioner is the final decision-maker, the discovery in this case indicates that decision is reached through a collaborative process with OIR staff. Because the Commissioner never received the hypothetical 2005 financial filings, he never had the opportunity to fully evaluate that informa *952 tion through this collaborative process with his staff.
Finally, the factors and criteria relevant to determining the insolvency of an insurance company are set out in statutes and rules and are also within the knowledge of experts both inside and outside of OIR. Asking for an opinion on what might have occurred based on those hypothetical facts would be an appropriate question to ask an independent expert on insurance company insolvency or subordinates within OIR who work on recommendations concerning insolvency referrals. Therefore, the hypothetical questions that respondents seek to ask the Insurance Commissioner in order to ascertain whether it is moré likely than not that he would have referred the insurance companies to DFS in 2005 if the financial filings had been different can be answered by others.

Separation of Powers Issues

In addition to finding that the information respondents seek to elicit from the Insurance Commissioner can be provided by others, we also find that compelling the questioning of agency heads regarding what discretionary decisions they might have made while carrying out their statutory duties if they had been provided certain information raises serious separation of powers issues. Those issues relate both to 1) questioning an agency head about hypothetical discretionary actions, which may relate to future decisions of the agency, based on an incomplete evaluation process and an incomplete factual scenario; and 2) subjecting agency heads to a flood of discovery requests about what they might have done concerning decisions made in collaboration with staff that would preclude them from being able to reasonably exercise the statutory duties of office.
In Brooke, 578 So.2d at 871, we expressed separation of powers concerns regarding the questioning of an agency head that went beyond narrow informational purposes and entered into the decision-making realm. Questions concerning what might have been done in the past or what will be done in the future may serve to limit the ability of an agency head to exercise his or her statutory duties in the future. An agency head should not be required to commit to a position concerning agency action based on hypothetical facts that, by nature of the fact that they are hypothetical, may have not been fully investigated or evaluated by the agency head and his or her staff. Such intrusion into the executive branch must be weighed against the ability of other persons to provide opinions concerning meeting the more likely than not standard.
In addition, once we allow discovery of agency heads concerning what they might have done based on alternative information, it is impossible to speculate the Pandora’s Box that we might be opening. The precedent would not be limited to decisions concerning insurance company solvency. Any party seeking damages or challenging a permitting decision of an agency might argue that an application was incomplete or based on inaccurate information.
The concern of setting such a precedent has been the foundation of this court’s reasoning in cases in which it has precluded the deposition of agency heads. See Univ. of W. Fla. Bd. of Trustees v. Habegger, 125 So.3d 323, 325 (Fla. 1st DCA 2013), review denied, 143 So.3d 918 (Fla. 2014) (“[Cjompelling the deposition of President Bense in this context could have future widespread ramifications and subject her to depositions in numerous other employment disputes.”); Dep’t of Agrie., 810 So.2d at 1058 (“To hold otherwise would, as argued by the department, subject agency heads to being deposed in virtually every rule challenge proceeding, to the detriment of the efficient operation of the agency in particular and state government as a whole.”). The time spent *953 preparing and testifying in this case will take away from the Insurance Commissioner’s duties and responsibilities as an agency head for the state of Florida, and the precedent served by compelling him to testify will create “a significant deterrent to qualified candidates seeking public service positions.” Home, 901 So.2d at 241. To allow an agency head to give speculative testimony concerning what might have been done with accurate information would constitute a serious intrusion into the executive branch of government.
For the foregoing reasons, we find the circuit court’s order compelling the Insurance Commissioner to appear for a deposition is a departure from the essential requirements of the law that will cause irreparable harm that cannot be remedied on appeal. See Horne, 901 So.2d at 240 (“Orders granting discovery requests have traditionally been reviewed by certiorari because once discovery is wrongfully granted, the complaining party is beyond relief.”). Thus, we GRANT the petition and QUASH the circuit court’s order compelling the Insurance Commissioner to appear for a deposition.
MAKAR, and OSTERHAUS, JJ., concur.

. None of the parties challenge the Insurance Commissioner's status as the agency head of OIR.

. It is not readily apparent to this court why the trial court could not have granted this limited relief.

. It is unnecessary for us to address whether the apex doctrine applies in the corporate context, and we specifically decline to do so in this opinion.