# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D18-4815
_____

SUZUKI MOTOR CORPORATION, a
foreign corporation,

    Petitioner,

    v.

SCOTT WINCKLER,

    Respondent.

_____

Petition for Writ of Certiorari—Original Jurisdiction.

August 29, 2019

OSTERHAUS, J.

Suzuki Motor Corporation seeks certiorari review of an order granting an application for a letter rogatory to take the examination of Mr. Osamu Suzuki, its current Chairman and former Chief Executive Officer. In the order, the trial court found that the "apex doctrine" does not apply outside the governmental context and that Mr. Suzuki was uniquely able to provide information relevant to this case. We deny the petition because the trial court's decision does not depart from the essential requirements of law.

## I.

Scott Winckler's case alleges that on June 16, 2013, the brakes failed on his GSX-R series Suzuki motorcycle while he was riding

it. The bike crashed and paralyzed Mr. Winckler from the waist down. Four months after the accident, Suzuki Motor Corporation issued a recall on the brakes of its GSX-R series motorcycles.

Mr. Winckler filed a products liability suit against Suzuki Motor Corporation related to his accident and the brake issue. In the course of discovery, he sought a letter rogatory from the trial court seeking to take the examination of the Chairman of the Board of Suzuki Motor Corporation in Japan. *See* Fla. R. Civ. P. 1.300(b). Mr. Winckler's application stated that the Chairman "possesses unique knowledge about specific facts relevant to [the] allegations," citing the Chairman's involvement with a document addressing the brake issue and a related email.

Suzuki Motor Corporation filed objections to the application and a motion seeking protection under the apex doctrine. Its position was that its top-level corporate manager should not be subject to examination when others within the corporation could testify to the relevant issues.* It also filed a declaration from Chairman Suzuki in opposition to the application, stating that he has "no independent memory" of reviewing or signing the document regarding the brake issue and "no personal knowledge" of the details.

After a hearing in October 2018, the trial court granted the motion for a letter rogatory. It found that the apex doctrine hadn't been applied outside of the governmental context and couldn't be applied to the corporate officer here. Besides rejecting the apex doctrine, the court found that that the Chairman had personal involvement and could uniquely provide case-relevant information due to having personal involvement with the brake issue. After the trial court granted the application, this petition for writ of certiorari followed.

---

* Mr. Winckler's counsel deposed Suzuki Motor Corporation's corporate representative earlier this year but weren't satisfied with some of his answers.

2

II.

We review petitions for writ of certiorari for "(1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case (3) that cannot be corrected on postjudgment appeal." *Citizens Prop. Ins. Corp. v. San Perdido Ass'n*, 104 So. 3d 344, 351 (Fla. 2012) (citations omitted). Our analysis focuses on the first prong—a departure from the essential requirements of the law. A departure from the essential requirements of the law is "a violation of a clearly established principle of law." *State v. Belvin*, 986 So. 2d 516, 525-26 (Fla. 2008) (quoting *Belvin v. State*, 922 So. 2d 1046, 1048 (Fla. 4th DCA 2006)).

Suzuki Motor Corporation argues that the trial court's order granting a letter rogatory violates the apex doctrine. The problem with its argument is that the doctrine is only clearly established in Florida in the government context, with respect to high-ranking government officials. The essence of Florida's apex doctrine is that "[an] *agency head* should not be subject to deposition, over objection, unless and until the opposing parties have exhausted other discovery and can demonstrate that the *agency head* is uniquely able to provide relevant information which cannot be obtained from other sources." *Dep't of Agric. & Consumer Servs. v. Broward Cty.*, 810 So. 2d 1056, 1058 (Fla. 1st DCA 2002) (emphasis added). "[A] party seeking to depose a . . . high-ranking *governmental official* must demonstrate the personal involvement of the official in a material way or the existence of extraordinary circumstances." *Horne v. Sch. Bd. of Miami-Dade County*, 901 So. 2d 238, 241 (Fla. 1st DCA 2005) (emphasis added). We highlight "agency head" and "governmental official" because we have noted before that "no Florida court has adopted the apex doctrine in the corporate context." *Fla. Office of Ins. Regulation v. Fla. Dep't of Fin. Servs.*, 159 So. 3d 945, 951 (Fla. 1st DCA 2015); *see also Remington Lodging & Hospitality, LLC v. Southernmost House, Ltd.*, 206 So. 3d 764, 765 n.1 (Fla. 3d DCA 2016). We emphasized in that case (though in dicta) "that the government context is distinguishable [from the corporate context] because of separation of powers concerns." *Id.* And so, it follows that because the apex doctrine hasn't been adopted in the corporate context, the trial court did not depart from the essential requirements of the

law by refusing to apply this doctrine to Suzuki Motor Corporation's corporate officer.

Moreover, trial court's decision that the Chairman's deposition was reasonably calculated to lead to the discovery of admissible evidence provides no basis for us to quash the order below. *See* Fla. R. Civ. P. 1.280(b)(1) (allowing a party to discover any matter that is not privileged and is relevant to the subject matter of the pending action or appears reasonably calculated to lead to the discovery of admissible evidence); *Univ. of W. Fla. Bd. of Trs. v. Habegger*, 125 So. 3d 323, 325 (Fla. 1st DCA 2013). In deciding whether to grant a writ of common-law certiorari, we are not so much concerned with "the mere existence of legal error as much as with the seriousness of the error." *Combs v. State*, 436 So. 2d 93, 95-96 (Fla. 1983). The district court should grant a petition "only when there has been a violation of a clearly established principle of law resulting in a miscarriage of justice." *Id.; see also Jones v. State*, 477 So. 2d 566, 569 (Fla. 1985) (Boyd, C.J., concurring specially) (noting that a "departure from the essential requirements of law . . . means an inherent illegality or irregularity, an abuse of judicial power, an act of judicial tyranny perpetrated with disregard of procedural requirements, resulting in a gross miscarriage of justice)." Here, we are mindful that trial courts have broad discretion in overseeing discovery and in protecting persons from whom discovery is sought. Fla. R. Civ. P. 1.280(c); *Rojas v. Ryder Truck Rental, Inc.*, 641 So. 2d 855, 857 (Fla. 1994). In this instance, the trial court's order cited specific evidence supporting its conclusion that the Chairman was personally involved with recall-related corporate documents and uniquely able to provide relevant information. *Cf. Remington Lodging & Hospitality*, 206 So. 3d 764; *Racetrac Petroleum v. Sewell*, 150 So. 3d 1247 (Fla. 3d DCA 2014). With documentary support underlying its ruling, we cannot conclude that this situation is like the *Habegger* and *General Star Indemnity Co. v. Atlantic Hospitality of Florida, LLC*, 57 So. 3d 238 (Fla. 3d DCA 2011), cases where trial courts departed from the essential requirements of law by allowing depositions of high officials that were not reasonably calculated to lead to the discovery of relevant evidence.

4

## III.

The petition for writ of certiorari is DENIED.

ROWE, J., concurs; B.L. THOMAS, J., dissents with opinion.

---

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

---

B.L. THOMAS, J., dissenting.

This case involves a tragic accident that resulted in catastrophic injuries. Nevertheless, I must respectfully dissent because the apex doctrine is and must be equally applicable in the private sector as it is in the governmental context. And even assuming the doctrine's basis in the governmental context is grounded in the separation of powers under article II, section 3 of the Florida Constitution, *see Fla. Office of Ins. Regulation v. Fla. Dept. of Financial Services*, 159 So. 3d 945, 952 (Fla. 1st DCA 2015), the abusive discovery allowed here has no basis in law or fact and under traditional rules of relevancy, extraordinary relief must be granted. Allowing discovery not meant to ferret out the truth, but designed to create settlement pressures, threatens the proper operation of the commercial enterprise for no legitimate factfinding purpose.

To answer the question by stating that the trial court's ruling cannot be a departure from law because no law recognizes the apex doctrine in the corporate context is no answer at all, *because otherwise the doctrine could never be applied.* That is precisely why Florida courts permit extraordinary review of improper discovery orders by writs of certiorari under Art. V, section 4(b)(3), Fla. Const.; Fla. R. App. P. 9.030 (b)(2)(A); *Allstate Ins. Co. v. Langston*, 655 So. 2d 91, 94-95 (Fla. 1995). Here, we should grant the writ and quash the order.

5

Respondents persuaded the lower court to allow for the issuance of letters rogatory to take the deposition of Osamu Suzuki, former Chief Executive Officer and current chairman of Suzuki Motor Corporation and resident of Japan. This petition involves a challenge to a one-page document, one of more than 250,000 pages of documents provided to Respondents, which provides a list of issues relevant to the suit involving a "GSX R series Front brake pressure loss."

Mr. Suzuki filed a "Declaration in Opposition to Plaintiff's Application for Letter Rogatory" under penalty of perjury pursuant to section 95.525, Florida Statutes, that he has "no independent memory" of signing the document. And he "cannot recollect [his signature] even after reviewing the document" which he signed more than five years before he filed the statement in opposition. Most significantly, actions by the "Quality Countermeasure Committee" involving the allegedly defective front-brake pressure could not be ordered, rejected, or modified by Mr. Suzuki. Finally, Mr. Suzuki stated, again under penalty of perjury, that he "did not prepare the document, and even what I might have known about it in 2013 would have been told to me by someone else in the Corporation. I would have had at that time *no personal knowledge of the details in that document*." (emphasis added.).

To keep this case in context, it must also be noted that plaintiffs deposed the Suzuki Motor Company's corporate representative for *three days*. It was not until Respondents amended their response to the petition before us that the court learned that this extensive discovery was purportedly unsatisfactory. Even more revealing, the Respondents have *failed to set a single* deposition of any member of the Quality Countermeasure Committee*, the sole body with the authority to decide what measures if any to take regarding the allegedly defective product part.*

To allow this unjustified deposition is to allow Respondents to disrupt the functions of the Petitioner for no legitimate reason. Mr. Suzuki is "involved in governmental affairs in various countries [in which Suzuki] does business including domestically, ongoing financial matters, exchange rate issues, expanding and enhancing the multiproduct line of [Suzuki] products domestically and internationally. Accordingly, he is "chronically busy with

6

important and business management issues as [Suzuki]'s Chairman, meeting with other [Suzuki] high level executives. . . on [a] regular basis, meeting with government officials and representatives from all countries around the world in which Suzuki does business, regular speaking engagements to industry and business groups, making public appearances representing Suzuki, and regular meeting with major corporate stockholders on the status of Suzuki business." Thus, if Mr. Suzuki is required to give testimony in this case, which would obviously result in being required to give testimony in hundreds of other cases, the deposition here would "substantially interfere with [his] job responsibilities as Chairman".

The trial court's order allowing this discovery abuse cited no justification other than "it is appropriate for Plaintiff to be granted an opportunity to discover from the Chairman, Mr. Suzuki, his perspective on the contents of the Document and Email." But in the face of sworn testimony that Mr. Suzuki has no recollection and had no authority to affect the decision regarding the recall or otherwise addressing the allegedly defective product, there can be only one logical conclusion: the discovery request of the top corporate chairman of a worldwide company with tens of thousands of employees who has provided an unrefuted statement of no involvement in the issue and a recitation of his extensive corporate leadership responsibilities can only be designed to harass and attempt to force a settlement to avoid significant corporate disruption. The trial court's order is thus a departure from the essential requirements of law for which Suzuki has no adequate remedy on appeal. *Horne v. School Bd. or Miami-Dade County*, 901 So. 2d 238 (Fla. 1st DCA 2005); *Dep't of Agric. & Consumer Servs. v. Broward Cty.*, 810 So. 2d 1056, 1058 (Fla. 1st DCA 2002).

In *Broward County,* this court applied the apex doctrine to prohibit the deposition of Agriculture Commission Charles Bronson in a rule-challenge proceeding. We said this:

> We agree with the department that the ALJ abused his discretion in denying the motion for protective order. In circumstances such as these, the agency head should not be subject to deposition, over objection, *unless and until the opposing parties have exhausted other discovery*

7

*and can demonstrate that the agency head is uniquely able to provide relevant information which cannot be obtained from other sources.* To hold otherwise would, as argued by the department, *subject agency heads to being deposed in virtually every rule challenge proceeding, to the detriment of the efficient operation of the agency in particular and state government as a whole.*

810 So. 2d at 1058 (emphasis added).

We reiterated and reaffirmed the rule in *Horne v. School Bd. or Miami-Dade County*, 901 So. 2d 238 (Fla. 1st DCA 2005), when we applied the apex doctrine to *former* governmental officials. We noted that application would help ensure that qualified people do not seek elevated public positions for fear of post-public employment discovery entanglements.

In *Fla. Office of Ins. Regulation v. Fla. Dept. of Financial Services*, 159 So. 3d 945 (Fla. 1st DCA 2015), this court discussed the apex doctrine in more detail than in earlier cases and stated:

> The concern of setting such a precedent has been the foundation of this court's reasoning in cases in which it has precluded the deposition of agency heads. *See Univ. of W. Fla. Bd. of Trustees v. Habegger*, 125 So.3d 323, 325 (Fla. 1st DCA 2013), *review denied*, 143 So.3d 918 (Fla. 2014) ("[C]ompelling the deposition of President Bense in this context could have future widespread ramifications and subject her to depositions in numerous other employment disputes."); *Dep't of Agric.*, 810 So.2d at 1058 ("To hold otherwise would, as argued by the department, subject agency heads to being deposed in virtually every rule challenge proceeding, to the detriment of the efficient operation of the agency in particular and state government as a whole."). The time spent preparing and testifying in this case will take away from the Insurance Commissioner's duties and responsibilities as an agency head for the state of Florida, and the precedent served by compelling him to testify will create "a significant deterrent to qualified candidates seeking public service positions." *Horne*, 901 So.2d at 241. To allow an agency head to give speculative testimony concerning what

8

might have been done with accurate information would constitute a serious intrusion into the executive branch of government.

For the foregoing reasons, we find the circuit court's order compelling the Insurance Commissioner to appear for a deposition is a departure from the essential requirements of the law that will cause irreparable harm that cannot be remedied on appeal. *See Horne*, 901 So.2d at 240 ("Orders granting discovery requests have traditionally been reviewed by certiorari because once discovery is wrongfully granted, the complaining party is beyond relief.").

159 So. 3d at 952–53. This logic is clearly equally applicable in the corporate context albeit not based on Art. II, section three, Fla. Const.

To allow meritless discovery depositions of corporate leaders, who have provided sworn statements that they have no discoverable knowledge of the issue at hand, or that such information can be obtained from persons with less corporate responsibilities, is to allow illegitimate disruption in the private sector that is forbidden in the public sector. While the separation of powers certainly compels the application of the apex doctrine in the public sphere, *the rationale* of the doctrine is equally applicable in the private sphere: the courts cannot countenance unjustified discovery of lead corporate executives *for no legitimate reason*.

In *Florida Office of Insurance Regulation v. Florida Department of Financial Services*, we specifically stated we were *not* addressing the issue of whether it applied in the corporate context: "It is unnecessary for us to address whether the apex doctrine applies in the corporate context, and we specifically decline to do so in this opinion." 159 So. 3d at 951 n.3. (Our note that we need not address the question implies that the doctrine *could apply* in the corporate context). But we recognized that:

Some state and federal courts refer to this doctrine as the "apex" doctrine, in the context of both high-ranking government and corporate officials. *See, e.g., State ex rel. Massachusetts Mut. Life Ins. Co. v. Sanders*, 228 W.Va. 749, 724 S.E.2d 353, 363 (2012) (adopting the "apex"

9

doctrine in the corporate context and noting that doctrine is "analogous to the approach this Court adopted for use when a party seeks to depose [a] high-ranking governmental official"); *Crown Cent. Petroleum Corp. v. Garcia*, 904 S.W.2d 125 (Tex.1995) (applying the "apex" doctrine to the deposition of a corporate officer).

159 So. 3d at 950–51.

Other state and federal courts have applied the apex doctrine in the corporate context. *Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*, 310 F.R.D. 523, 527-29 (S.D. Fla. 2015) (prohibiting deposition of corporate co-founders); *Alberto v. Toyota Motor Corp.*, 796 N.W. 2d 490, 497 (Mich. Ct. App. 2010) (prohibiting depositions of Toyota executives in products-liability case where executives possessed no more than "generalized knowledge of Toyota's unintended acceleration problems"); *State ex rel. Mass. Mut. Life Ins. Co. v. Sanders*, 724 S.E.2d 353, 364 (W. Va. 2012) (cited above); *Liberty Mut. Ins. Co. v. Superior Court*, 13 Cal. Rptr. 2d 363, 367-68 (Cal. Ct. App. 1992) (adopting apex doctrine and prohibiting deposition of president of company with no knowledge of claims). We should apply it now to this case.

Furthermore, whether the rationale for granting certiorari relief here is labeled the "apex doctrine" or we simply apply fundamental law applicable to prevent discovery abuse which "is not reasonably calculated to lead to the discovery of admissible evidence," we should grant the writ:

> Certiorari is available to review a discovery order which departs from essential requirements of law and causes injury that has no adequate remedy in a subsequent appeal. *Banc of Am. Inv. Servs. v. Barnett*, 997 So.2d 1154, 1155 (Fla. 3d DCA 2008). The order departs from essential requirements of law because Atlantic Hospitality has not shown that the president's deposition is "reasonably calculated to lead to the discovery of admissible evidence" under Florida Rule of Civil Procedure 1.280. *See Granada Ins. Co. v. Ricks*, 12 So.3d 276, 277 n.1 (Fla. 3d DCA 2009). General Star has shown that its president is a manager, not an adjuster or

other employee with personal knowledge of the factual disputes involved in the lawsuit.

*Gen. Star Indem. Co. v. Atl. Hosp. of Fla., LLC*, 57 So. 3d 238, 239 (Fla. 3rd DCA 2011). The facts here readily support granting extraordinary relief, where Respondents have failed to depose any member of the relevant corporate committee, spent three days deposing the corporate representative, and have no legitimate reason to depose Mr. Suzuki, and this will subject him to countless other illegitimate discovery requests.

As the Third District noted in a very similar case of discovery abuse:

> The injury that cannot be remedied in a subsequent, plenary appeal is described by General Star's president in her affidavit:

> 12. As President and Chief Executive Officer of General Star Management Company, my signature appears on every policy issued by General Star Indemnity Company in the State of Florida as a standard, pre-printed signature on all policies.

> 13. Because of the size and nature of the insurance business the number of people insured by General Star, Genesis, and General Re, the insureds and reinsureds of these entities are involved in hundreds of lawsuits throughout the United States. If I were summoned as a deponent to testify in each of those cases, I would not have time to fulfill my duties as an executive officer of Genesis, General Star or General Re, as I could literally be in depositions every single day. It would be extremely disruptive to my responsibilities to any one of these companies and its policyholders if I were to give depositions in cases involving individual insureds, when I was not involved with their claims or policies, as is the case here.

11

> I have not participated in the above-captioned litigation, or in the underlying insurance claim, or in the underwriting of the subject policy, and I am filing this affidavit in support of a motion for protective order.

This is an obvious but compelling point. The job of the president of the company is to manage the company, not to fly around the United States participating in depositions about policy-related claim disputes of which the president has no personal knowledge. While the out-of-pocket costs of such an exercise can be calculated and shifted if appropriate at the conclusion of the case (or in a separate sanctions motion), the effect on the company is much more difficult to measure. *If all claimants demand and obtain the same right, the chief executive officer manages his or her deposition schedule, not the company.*

57 So. 3d at 239-40 (emphasis added).

Our facts here are almost identical. A chairman of a worldwide company, involved in hundreds of lawsuits, cannot be subjected to discovery which is not reasonably calculated to lead to the admission of relevant evidence where less intrusive means of obtaining relevant evidence in discovery have not been attempted, and the consequent disruption of corporate function cannot be remedied on appeal.

We should grant the writ and order the trial court to grant the protective order. Therefore, I respectfully dissent.

_____

Raoul G. Cantero of White & Case LLP, Miami, and Larry M. Roth of Larry M. Roth, P.A., Winter Park, for Petitioner.

Maegen Peek Luka and Celene H. Humphries of Brannock & Humphries, Tampa, for Respondent.