# Supreme Court of Florida

No. SC21-929

**IN RE: AMENDMENT TO FLORIDA RULE OF CIVIL PROCEDURE 1.280.**

August 26, 2021

MUÑIZ, J.

Many courts apply the "apex doctrine" to protect high-level corporate officers from the risk of abusive discovery, while still honoring opposing litigants' right to depose such persons if necessary.[1] Florida's version of the apex doctrine, developed by the district courts of appeal as a common law gloss on our rules of civil

---

1. *See, e.g.,* *Tierra Blanca Ranch High Country Youth Program v. Gonzalez,* 329 F.R.D. 694, 696 (D.N.M. 2019) (the apex doctrine "has been applied by a variety of federal district courts nationwide"); *State ex rel. Mass. Mut. Life Ins. Co. v. Sanders,* 724 S.E.2d 353, 359-63 (W. Va. 2012) (adopting the apex doctrine and examining case law from other jurisdictions that have done so). Federal district courts in Florida apply the doctrine. *See, e.g., Office Depot, Inc. v. Elementum Ltd.,* No. 9:19-cv-81305, 2020 WL 5506445, at *3 (S.D. Fla. Sep. 14, 2020).

procedure, protects only high-level government officials. [2] On our own motion, we now amend those rules to codify the apex doctrine and to extend its protections to the private sphere.[3]

## I.

We begin with a brief discussion of *Suzuki Motor Corp. v. Winckler*, 284 So. 3d 1107 (Fla. 1st DCA 2019), the impetus for our decision to take up the apex doctrine now.

*Suzuki* came to the First District Court of Appeal on certiorari review. The issue was whether the trial court had departed from

---

2. We appreciate that some judges have drawn a distinction between the apex doctrine (for private sector officers) and the "agency-head deposition test" (for government officers). *See, e.g.*, *Miami Dade College v. Allen*, 271 So. 3d 1194, 1198 (Fla. 3d DCA 2019) (Miller, J., specially concurring). For simplicity, we will use the term "apex doctrine" when discussing both contexts, private and government. *See, e.g.*, *City of Huntington v. AmerisourceBergen Drug Corp.*, No. 3:17-01362, 2020 WL 3520314, at *2 (S.D. W.Va. June 29, 2020) ("The 'apex doctrine' applies to a specific subset of deposition notices that demand the appearance of high-level executives or high-ranking government officials."); Iain D. Johnston, *Apex Witnesses Claim They Are Too Big to Depose*, 41 Litigation 41, 43 (2014) ("Although some courts articulate the tests differently, for practical purposes, courts apply the apex doctrine and the high-ranking government official privilege in the same way.").

3. We have jurisdiction. *See* art. V, § 2(a), Fla. Const; Fla. R. Gen. Prac. & Jud. Admin. 2.140(d).

the essential requirements of law by not invoking the apex doctrine to prevent the examination of Osamu Suzuki, then his company's chairman and former chief executive officer. *Id.* at 1108. As the district court correctly noted, a court departs from the essential requirements of law when it violates a clearly established principle of law. *See Williams v. Oken*, 62 So. 3d 1129, 1133 (Fla. 2011).

The district court described "the essence of Florida's apex doctrine" as follows:

> [A]n *agency head* should not be subject to deposition, over objection, unless and until the opposing parties have exhausted other discovery and can demonstrate that the *agency head* is uniquely able to provide relevant information which cannot be obtained from other sources.

*Winckler*, 284 So. 3d at 1109 (quoting *Dep't of Agric. & Consumer Servs. v. Broward Cty.*, 810 So. 2d 1056, 1058 (Fla. 1st DCA 2002)).

The First District observed that the apex "doctrine is only clearly established in Florida in the government context, with respect to high-ranking government officials." *Id.* In fact, the district court added, "no Florida court has adopted the apex doctrine in the corporate context." *Id.* (quoting *Fla. Office of Ins. Regulation v. Fla. Dep't of Fin. Servs.*, 159 So. 3d 945, 951 (Fla. 1st

- 3 -

DCA 2015)). Against that baseline, the district court concluded that "the trial court did not depart from the essential requirements of the law by refusing to apply this doctrine to Suzuki Motor Corporation's corporate officer." *Id.*

Judge Thomas dissented. *Id.* at 1110. He accepted the premise that Florida courts have not invoked the apex doctrine outside the government context, but he maintained that "*the rationale* of the doctrine is equally applicable in the private sphere: the courts cannot countenance unjustified discovery of lead corporate executives *for no legitimate reason.*" *Id.* at 1113. Judge Thomas lamented that the majority's approach—which found it determinative that the apex doctrine was not "clearly established" in the corporate context—would prevent Florida's appellate courts from ever extending the apex doctrine to that context in the first instance. *Id.* at 1110.

Notwithstanding the *Suzuki* panel's split on the merits, it unanimously certified to this Court the question: "Does a departure from the essential requirement of law occur when the so-called apex doctrine, which applies to governmental entities . . . , is not applied to a corporation?" *Id.* at 1115. We initially granted Suzuki's

- 4 -

petition to review the First District's decision.  But in an order issued concurrently with this opinion, we have exercised our discretion to discharge jurisdiction in the case.

II.

Unconstrained by the limited scope of certiorari review, this rules case allows us to determine whether to adopt the apex doctrine in the corporate context.  Our approach to this question is framed by three considerations.  First, as reflected in Florida Rule of Civil Procedure 1.280(b) (Scope of Discovery), our rules generally take a permissive approach to the availability of discovery.  Second, as reflected in Florida Rule of Civil Procedure 1.280(c) (Protective Orders), our rules' generally liberal orientation toward discovery is checked by the availability of protective orders "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  And third, rather than limit high-level government officers to the generic protection of rule 1.280(c), district courts in Florida for decades have enforced the apex doctrine in the government context.

Preventing harassment and unduly burdensome discovery has always been at the heart of that doctrine in our state.  The First

District invoked that rationale in Florida's seminal apex doctrine case, *Department of Agriculture & Consumer Services v. Broward County*, 810 So. 2d 1056, 1058 (Fla. 1st DCA 2002). There, the court observed that withholding the doctrine's protections would "subject agency heads to being deposed in virtually every rule challenge proceeding, to the detriment of the efficient operation of the agency in particular and state government as a whole." *Id.* Similarly, in a case applying the apex doctrine for the benefit of a state university president, the First District warned that "compelling the deposition of President Bense in this context could have future widespread ramifications and subject her to deposition in numerous other employment disputes." *Univ. of W. Fla. Bd. of Trustees v. Habegger*, 125 So. 3d 323, 325 (Fla. 1st DCA 2013). Over the years, varied government officers in Florida have benefited from the apex doctrine.

We think that the efficiency and anti-harassment principles animating that doctrine are equally compelling in the private sphere. "Virtually every court that has addressed deposition notices directed at an official at the highest level or 'apex' of corporate management has observed that such discovery creates a

tremendous potential for abuse or harassment." *Celerity, Inc. v. Ultra Clean Holding, Inc.*, No. C 05-4374, 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007). Federal district courts in Florida have similarly commented that, "by virtue of their position," apex officials "are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts." *Brown v. Branch Banking & Trust Co.*, No. 13-81192-CIV, 2014 WL 235455, at *2 (S.D. Fla. Jan. 22, 2014) (cleaned up). We see no good reason to withhold from private officers the same protection that Florida courts have long afforded government officers.

Like other courts that have adopted the apex doctrine in the corporate context, we emphasize that the doctrine "in no way creates a blanket prohibition on the taking of a deposition of a high-ranking corporate official." *Sanders*, 724 S.E.2d at 364. The point of the apex doctrine is to balance the competing goals of limiting potential discovery abuse and ensuring litigants' access to necessary information. Properly applied, the doctrine "will prevent undue harassment and oppression of high-level officials while still providing a [party] with several less-intrusive mechanisms to obtain

the necessary discovery, and allowing for the possibility of conducting the high-level deposition if warranted." *Liberty Mut. Ins. Co. v. Superior Ct.,* 13 Cal. Rptr. 2d 363, 367-68 (Cal. Ct. App. 1992).

III.

We are persuaded that it is in Florida's best interests to codify the apex doctrine in our rules of civil procedure and to apply the doctrine to both private and government officers. Making this change as a rule amendment allows us to ensure consistency across the two contexts[4] and to define and explain the apex doctrine as clearly as possible.

The new Florida Rule of Civil Procedure 1.280(h) (Apex Doctrine) that we adopt today is as follows:

> A current or former high-level government or corporate officer may seek an order preventing the officer from being subject to a deposition. The motion, whether by a party or by the person of whom the deposition is sought, must be accompanied by an affidavit or declaration of the officer explaining that the officer lacks unique, personal knowledge of the issues being litigated. If the officer meets this burden of production, the court shall issue an order preventing the deposition, unless the party seeking

---

4. Of course, we recognize that certain privileges or constitutional principles might be applicable in one context and not the other.

the deposition demonstrates that it has exhausted other discovery, that such discovery is inadequate, and that the officer has unique, personal knowledge of discoverable information. The court may vacate or modify the order if, after additional discovery, the party seeking the deposition can meet its burden of persuasion under this rule. The burden to persuade the court that the officer is high-level for purposes of this rule lies with the person or party opposing the deposition.

We now explain key aspects of the rule.

*"Current or former high-level government or corporate officer."* A threshold issue in every case involving the rule is whether the would-be deponent is, in fact, a "current or former high-level government or corporate officer." When that person's "high-level" status is disputed, the burden is on the person or party resisting the deposition to persuade the court that this requirement is satisfied. Of course, if the requirement is not satisfied, the would-be deponent cannot claim the benefit of the rule.

We do not think it is feasible or desirable to codify a definition of "high-level government or corporate officer." Courts have enforced the apex doctrine in the government and private contexts for decades, and there is a rich body of case law applying the term. In cases that are on the margin, the proper application of the term should be discerned the same way one interprets any other

undefined term in a statute or rule—according to how a reasonable, fully informed reader would understand the term, in context. Given that the new rule codifies a doctrine of long legal standing, a proper interpretation of the term will necessarily consider how courts have traditionally used the term, together with the well-established purposes of the apex doctrine. And the typical reader's familiarity with those materials will be assumed. *Cf.* Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 536 (1947) ("If [words] are addressed to specialists, they must be read by judges with the minds of the specialists.").

Where courts apply the apex doctrine at all, they generally extend the protections of the doctrine to former high-level officers. *See Horne v. Sch. Bd. of Miami-Dade Cnty.*, 901 So. 2d 238, 241 (Fla. 1st DCA 2005) (holding in the government context that the apex doctrine "is equally applicable to former agency heads and high-ranking officials in circumstances such as these involving past official conduct"); *Palmisano v. Paragon 28, Inc.*, No. 21-60447-CIV, 2021 WL 1686948, at *3 (S.D. Fla. 2021) ("Palmisano is Wright's former CEO. His deposition, therefore, is subject to the apex doctrine."); *Fed. Deposit Ins. Corp. v. Galan-Alvarez*, No. 1:15-mc-

00752, 2015 WL 5602342, at *4 (D.D.C. Sept. 4, 2015) ("The apex doctrine is no less applicable to former officials than to current officials."). To avoid any doubt, the rule explicitly covers former officers.

Finally, we note that the rule—consistent with the case law—uses the term "officer" in the generic sense of "[o]ne who holds an office of authority or trust in an organization, such as a corporation or government." *American Heritage Dictionary* 1223 (5th ed. 2011). The case law in this area treats as synonymous the terms officer, official, and executive. In the apex doctrine context, "high-level officer" status depends on the organization and the would-be deponent's role in it, not on whether the person is an "officer" in a legal sense.

*Affidavit or declaration and its contents.* Courts applying the apex doctrine in the corporate context have typically required the person resisting deposition to produce an affidavit disclaiming unique, personal knowledge of relevant facts. By contrast, Florida courts applying the doctrine in the government context have not always required such an affidavit. *See Allen*, 271 So. 3d at 1199 (Miller, J., specially concurring). We think that requiring an

affidavit or declaration is essential to the proper functioning of the rule in both contexts, and so we have made the requirement explicit in the rule.

We emphasize the rule's requirement that the officer "explain" that he or she lacks unique, personal knowledge of the issues being litigated. Bald assertions of ignorance will not do. A sufficient explanation will show the relationship between the officer's position and the facts at issue in the litigation. The point is for the court—and the other side—to be able to evaluate the facial plausibility of the officer's claimed lack of unique, personal knowledge.

*The parties' burdens.* Under the rule, the person or party resisting a deposition has two burdens: a burden to persuade the court that the would-be deponent meets the high-level officer requirement, and a burden to produce an affidavit or declaration explaining the official's lack of unique, personal knowledge of the issues being litigated. If the resisting person or party satisfies those burdens, and the deposition-seeker still wants to depose the high-level officer, the deposition-seeker bears the burden to persuade the court that it has exhausted other discovery, that such discovery is

- 12 -

inadequate, and that the officer has unique, personal knowledge of discoverable information.

The rule's approach to the parties' respective burdens is consistent with how Florida courts have applied the apex doctrine in the government context. *See, e.g., Univ. of W. Fla. Bd. of Trs. v. Habegger*, 125 So. 3d 323, 325 (Fla. 1st DCA 2013) (placing ultimate burden of persuasion on the deposition-seeker). And although courts nationally are not entirely consistent in their allocation of the parties' burdens,[5] the rule's approach is common in the case law. *See, e.g., Shenzhen Kinwong Elec. Co. v. Kukreja*, No. 18-61550, 2019 WL 8298217, at *1 (S.D. Fla. Dec. 12, 2019) (party seeking apex deposition has burden to establish unique knowledge and exhaustion of other discovery); *Sanders*, 724 S.E.2d at 364 ("[T]he circuit court should first determine whether the party seeking the deposition has demonstrated that the official has any unique or superior personal knowledge of discoverable information."); *Affinity Labs of Texas v. Apple, Inc.*, No. C 09-

---

5. *See* Johnston, *supra*, note 2, at 44 ("[W]hen it comes to determining which party bears the burden on the issue of deposing apex witnesses, decisions are all over the place.").

4436CW, 2011 WL 1753982, at *15 (N.D. Cal. May 9, 2011) ("[P]arties seeking to depose a high ranking corporate officer must first establish that the executive (1) has unique, non-repetitive, firsthand knowledge of the facts at issue in the case, and (2) that other less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success.").

*Relationship to rule 1.280(c).* The rule we adopt today stands on its own. New rule 1.280(h) is an alternative to rule 1.280(c) for use in the limited context of depositions of high-level government and corporate officers. The new rule is not governed by the "good cause" standard of rule 1.280(c), and it imposes burdens of production and persuasion that are distinct from the burdens at play in rule 1.280(c). Government and corporate officers who cannot meet the new rule's requirements, or who choose not to try to, remain free to seek relief under rule 1.280(c).

IV.

We amend Florida Rule of Civil Procedure 1.280 as reflected in the appendix to this opinion. New language is indicated by underscoring. The amendment shall become effective immediately

- 14 -

upon the issuance of this opinion, and it applies in pending cases. Where appropriate, courts should exercise their discretion to allow parties a reasonable opportunity to convert a pending motion for protective order under rule 1.280(c) to a motion under new rule 1.280(h).

Because the amendment was not published for comment previously, interested persons shall have seventy-five days from the date of this opinion in which to file comments with the Court.[6]

It is so ordered.

CANADY, C.J., and POLSTON, LAWSON, COURIEL, and GROSSHANS, JJ., concur.
LABARGA, J., dissents with an opinion.

---

6. All comments must be filed with the Court on or before November 9, 2021, as well as a separate request for oral argument if the person filing the comment wishes to participate in oral argument, which may be scheduled in this case. If filed by an attorney in good standing with The Florida Bar, the comment must be electronically filed via the Florida Courts E-Filing Portal (Portal) in accordance with *In re Electronic Filing in the Supreme Court of Florida via the Florida Courts E-Filing Portal*, Fla. Admin. Order No. AOSC13-7 (Feb. 18, 2013). If filed by a nonlawyer or a lawyer not licensed to practice in Florida, the comment may be, but is not required to be, filed via the Portal. Any person unable to submit a comment electronically must mail or hand-deliver the originally signed comment to the Florida Supreme Court, Office of the Clerk, 500 South Duval Street, Tallahassee, Florida 32399-1927; no additional copies are required or will be accepted.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THIS AMENDMENT.

LABARGA, J., dissenting.

Today, on its own motion, effective immediately, and with the ease of a rule amendment, the majority abandons Florida's long-standing refusal of affording special discovery protections to top-level corporate decision-makers. I respectfully dissent.

Rule 1.280, Florida Rules of Civil Procedure, sets forth "General Provisions Governing Discovery." The new rule adopted by the majority, rule 1.280(h) ("Apex Doctrine"), provides that "a current or former high-level government or corporate officer" may not be subjected to a deposition "unless the party seeking the deposition demonstrates that it has exhausted other discovery, that such discovery is inadequate, and that the officer has unique, personal knowledge of discoverable information." Majority op. at 8-9. The corporate officer may seek such protection by filing a motion for protective order and attaching an affidavit or declaration explaining that the officer lacks such unique and personal knowledge of the issues being litigated. Majority op. at 8.

- 16 -

The majority's reasoning for the change is principally predicated upon the potential for abusive discovery tactics against an official at the highest level or "apex" of corporate management: "Virtually every court that has addressed deposition notices directed at an official at the highest level or 'apex' of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment." Majority op. at 6-7 (quoting *Celerity, Inc. v. Ultra Clean Holding, Inc.,* No. C 05-4374, 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007)).

"Federal district courts in Florida have similarly commented that, 'by virtue of their position,' apex officials 'are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts.' " Majority op. at 7 (quoting *Brown v. Branch Banking & Trust Co.,* No. 13-81192-CIV, 2014 WL 235455, at *2 (S.D. Fla. Jan. 22, 2014).

However, as discussed below, the existing discovery framework contained in the Florida Rules of Civil Procedure adequately affords trial judges with the necessary authority and tools to deal with any

potential abuse or harassment, thus rendering the new rule adopted here today unnecessary.

Any discussion of Florida's discovery process must begin with the recognition that the Florida Rules of Civil Procedure afford parties in litigation with broad discovery tools. "Our rules of civil procedure broadly allow parties to obtain discovery of 'any matter, not privileged, that is relevant to the subject matter of the pending action,' whether the discovery would be admissible at trial, or is merely 'reasonably calculated to lead to the discovery of admissible evidence.' " *Allstate Ins. Co. v. Boecher*, 733 So. 2d 993, 995 (Fla. 1999) (quoting Fla. R. Civ. P. 1.280(b)(1)).

Rule 1.280(a), for instance, provides that "[p]arties may obtain discovery by one or more of the following methods: deposition upon oral examination or written questions; written interrogatories; production of documents or things or permission to enter upon land or other property for inspection and other purposes; physical and mental examinations; and requests for admission." Moreover, rule 1.280(a) further provides that unless the court orders otherwise, or except as provided by the rules, "the frequency of use of these methods is not limited."

Thus, the goal of our discovery rules is to expand access to information that is "relevant to the subject matter of the pending action," not to diminish it. Fla. R. Civ. P. 1.280(b)(1).

The discovery process, however, is not without limitations. Rule 1.280(c) authorizes the trial court, for good cause shown, to enter any order to protect a party or person from "*annoyance, embarrassment, oppression, or undue burden or expense* that justice requires." (Emphasis added.) Rule 1.280(c) further authorizes the trial court to impose terms and conditions on discovery, including:

> (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into; or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; and (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

Thus, Florida's existing discovery framework provides trial courts with the necessary tools to address abusive discovery

- 19 -

practices, ranging from mandating the method of discovery to be used, to prohibiting the discovery from occurring in the first place. Rule 1.280(c) even provides for the award of expenses incurred in relation to the motion for protective order. Accordingly, there is no need for the special discovery protection afforded to top-level corporate officers by the majority's new rule. The protection, if needed, is available in Florida's existing rules of civil procedure.

The majority also contends that the application of the apex doctrine to top-level corporate decision-makers will make the discovery process more efficient. I disagree. The majority correctly acknowledges that a threshold issue in every case involving the new rule will be "whether the would-be deponent is, in fact, a 'current or former high-level government or corporate officer.'" Majority op. at 9. According to the majority, "[w]hen that person's 'high-level' status is disputed, the burden is on the person or party resisting the deposition to persuade the court that this requirement is satisfied." Majority op. at 9.

Despite the potential difficulties of determining whether the would-be deponent is or was a "high-level" corporate officer, the

majority gave any attempt to codify a helpful definition a pass.

Instead, the majority offers the following:

> We do not think it is feasible or desirable to codify a definition of "high-level government or corporate officer." Courts have enforced the apex doctrine in the government and private contexts for decades, and there is a rich body of case law applying the term. In cases that are on the margin, the proper application of the term should be discerned the same way one interprets any other undefined term in a statute or rule—according to how a reasonable, fully informed reader would understand the term, in context. Given that the new rule codifies a doctrine of long legal standing, a proper interpretation of the term will necessarily consider how courts have traditionally used the term, together with the well-established purposes of the apex doctrine. And the typical reader's familiarity with those materials will be assumed.

Majority op. at 9-10.

Thus, once it is determined, after what could amount to substantial, expensive, and lengthy litigation, that the would-be deponent is indeed a current or former high-level corporate officer, the next question will be whether that person is the officer who has the unique or personal knowledge of discoverable information. The potential for abuse, gamesmanship, expense, and delay that can be reasonably anticipated from this process clearly outweighs any benefits expected to be derived from the new rule adopted by the

majority here today. This is especially the case when the protections the new rule espouses already exist in the rules of procedure.

Tellingly, in adopting the apex doctrine, Florida joins only four states that have adopted the doctrine: California, Michigan, West Virginia, and Texas. The remaining forty-six states have not adopted the doctrine, and courts in at least five states—Oklahoma, Missouri, Colorado, Connecticut, and North Carolina—have expressly rejected it. *See Crest Infinity, II, LP v. Swinton*, 174 P. 3d 996, 1004 (Okla. 2007); *State ex rel. Ford Motor Co. v. Messina*, 71 S.W.3d 602, 607 (Mo. 2002) ("This Court declines to adopt an 'apex' rule. Instead, depositions of top-level decision-makers should proceed in accordance with Rules 56.01(b)(1) and 56.01(c)."); *BlueMountain Credit Alternatives Master Fund L.P. v. Regal Ent. Grp.,* 465 P.3d 122, 131 (Colo. Ct. App. 2020) ("[A] growing number of state courts, including those whose rules of civil procedure, like ours, are modeled on the federal rules, have rejected it."); *Duke Energy Carolinas, LLC v. AG Ins. SA/NV,* No. 17 CVS 5594, 2019 WL 6699461, at *4 (N.C. Super. Ct. Dec. 6, 2019); *Netscout Sys., Inc. v. Gartner, Inc.,* FSTCV 1460229885, 2016 WL 5339454, at *6 (Conn.

Super. Ct. Aug. 22, 2016) ("[I]t seems clear that the rule is incompatible with Connecticut law to the extent it shifts the burden of showing good cause to the proponent of the deposition.").

Four of the five states that have rejected the apex doctrine have discovery rules which, with language that is nearly identical to Florida's rule 1.280, provide a discovery framework for dealing with abusive discovery tactics. Given that framework, these states found it unnecessary to provide high-level corporate officers with any further special discovery protection—as should the State of Florida.

I respectfully dissent.

Original Proceeding – Florida Rules of Civil Procedure

# APPENDIX

## Rule 1.280     General Provisions Governing Discovery

(a) – (g) [No Change]

(h) **Apex Doctrine.**  A current or former high-level government or corporate officer may seek an order preventing the officer from being subject to a deposition. The motion, whether by a party or by the person of whom the deposition is sought, must be accompanied by an affidavit or declaration of the officer explaining that the officer lacks unique, personal knowledge of the issues being litigated. If the officer meets this burden of production, the court shall issue an order preventing the deposition, unless the party seeking the deposition demonstrates that it has exhausted other discovery, that such discovery is inadequate, and that the officer has unique, personal knowledge of discoverable information. The court may vacate or modify the order if, after additional discovery, the party seeking the deposition can meet its burden of persuasion under this rule. The burden to persuade the court that the officer is high-level for purposes of this rule lies with the person or party opposing the deposition.

### Committee Notes

[No Change]

### Court Commentary

[No Change]